R. J. SAUNDERS & Co., INC. *v.* UNITED STATES

No. 7754.—

Entry No. 728130.

(Decided November 15, 1949)

*Lane, Young & Fox* (*William Young* and *William H. Fox* of counsel) for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector* and *Guy Gilbert Ribaudo,* special attorneys), for the defendant.

FORD, Judge: The question involved in this appeal for reappraisement is the proper dutiable values of certain imported unbound printed sheets for books, exported from England and entered at the port of New York. The merchandise consists of unbound printed sheets for 500 each of the children's books entitled "Johnny Crow's Party" and "Johnny Crow's Garden." Each set of sheets for these books was invoiced and entered at 10 pence each, plus cases and packing, and appraised at 1 shilling, 7 pence each, plus cases and packing.

At the trial of this case it was agreed between the respective counsel that there was no foreign, no export, and no United States' values for the merchandise, and that the proper basis for finding values was cost of production as defined in section 402 (f) (1), (2), (3), and (4) of the Tariff Act of 1930.

Evidence was offered as to whether or not the cost of production should be based upon the cost of producing the 500 copies each of "Johnny Crow's Party" and "Johnny Crow's Garden" here involved, or spread over a larger number of copies of the printed sheets. According to the record before me, these unbound sheets were, after importation, bound into books, and when such books were sold at retail a certain sum was added to the retail price, collected from the retail purchaser, and transmitted through specified channels to the author of the books so sold. The sum so collected and transmitted is denominated a royalty. The unbound sheets were never sold in the condition in which imported, and no royalty was ever due and payable or collected until these unbound sheets had been converted into books and sold at retail.

After this appeal was tried and submitted and prior to the rendition of a decision, on motion of counsel for the plaintiff, the submission was set aside, and the case restored to the May 16, 1949, docket. However, prior to the case being called for a hearing, counsel for the respective parties resubmitted the same upon the following stipulation, in which it was agreed:

That the imported sets of sheets for 500 copies of the book entitled "Johnny Crow's Garden," here in question, were supplied out of an edition of sets of sheets for 6,000 copies of said book printed at one time, and prior to the date of exportation of the said imported sheets; and that the total cost of the plates from which the said 6,000 sets of sheets were printed was English £64.

That the imported sets of sheets for 500 copies of the book entitled "Johnny Crow's Party," here in question, were supplied out of an edition of sets of sheets for 5,000 copies of said book printed at one time, and prior to the date of exportation of the said imported sheets; and that the total cost of the plates from which the said 5,000 sets of sheets were printed was English £23.

That the cost of production of the unbound sets of sheets here in question, under Section 402 (f) (1) (2) (3) and (4), Tariff Act of 1930, determined in accordance with the basis held by the Appellate Court to be applicable in finding the cost of production of unbound sets of sheets for books, in the case of OXFORD

*UNIVERSITY PRESS, N. Y., INC.* v. *UNITED STATES*, Suit 4607, decided March 1, 1949, is, as follows:

(a) Unbound sets of sheets for "Johnny Crow's Garden," eleven (11) English pence per set of sheets, not including any amount paid to the author for royalty;

(b) Unbound sets of sheets for "Johnny Crow's Party" nine (9) English pence per set of sheets not including any amount paid to the author for royalty.

That if the amount paid as royalty to the author of said books is held by this Court to be a part of the dutiable value of the said unbound sets of sheets here in question, then the cost of production of said sheets would be two and one-half (2½) English pence additional per set of sheets for each of the said respective books.

That in view of this stipulation and the decision in the said *OXFORD* case, *supra*, the cost of production for sheets for 500 books, as shown in the affidavit of W. A. Herring (Exhibit 1), shall be disregarded for the purposes of the instant case.

That the record in said Suit 4607 may be incorporated in and made a part of the record herein.

That the above entitled reappraisement may be deemed to be submitted for decision upon this stipulation, and the record as previously made; * * *.

In view of the fact that the above-quoted stipulation definitely fixes the cost of production of the imported merchandise, if the royalty be held not to be a part of the cost of production, and also if the royalty be held to be a part of the cost of production, the only question remaining for determination is whether or not the amount of the royalty should be included as a part of the cost of production of the imported unbound sheets for books.

On the question of royalty, plaintiff's exhibit 1 contains the following statement:

That prior to, or about January 1, 1937, the royalties on works sold by Frederick Warne & Co., Ltd., to Frederick Warne & Co., Inc., were charged and paid only upon actual retail sale of the books but that after said date, said works and the royalties thereon were billed to Frederick Warne & Co., at the same time for convenience only, and that the advanced billing of royalties did not then and does not now entitle the author to royalties other than on retail sale of the works, and that there is no agreement or understanding to the contrary.

The above statements are fully confirmed by the testimony of plaintiff's witness Treble to the effect that the unbound sheets are never sold in the condition as imported; that these unbound sheets are always bound into books in this country, and that the charge for royalties is a charge that is made on the retail sales of the bound books and that this charge is never made on the unbound sheets as imported.

In support of the contention that the amount of the royalty should not be added to or included as a part of the cost of production of the unbound sheets, counsel for the plaintiff cites T. D. 31903, wherein the Treasury Department, after an exhaustive consideration of the question of the dutiability of royalties on books produced in this

country by binding unbound printed sheets after importation, held that a royalty payable to the author directly, or through a foreign publisher, upon the sale of the completed book and not upon the unbound printed sheets, as imported, did not constitute any part of the dutiable value of the imported unbound sheets.

Counsel for the plaintiff also cites as supporting his contention *Adams Express Company* v. *United States*, Circular No. 24068; *Macmillan & Co.* v. *United States*, Circular No. 28379; *Doran & Co.* v. *United States*, Circular No. 33714; and *Thos. Meadows & Co.* v. *United States*, Circular No. 27593. In the latter case the court stated:

This is an appeal from the finding of value by General Appraiser Fischer of unbound sheets of a book entitled "A Russian Garland of Fairy Tales." The importers deducted on entry from the invoice price of 1 shilling 2 pence per unit, 5 pence to make market value. The United States appraiser on appraisement added back an amount equal to that deducted on entry and Judge Fischer affirmed the appraiser's action.

As to the conditions attending the purchase of these sheets, Robert M. McBride, head of the importing firm, testified:

Q. These are purchased outright?—A. Yes, sir.
 *  *  *  *  *  *  *
Q. What was the price paid for these books?—A. Nine pence, plus 5 pence royalty.
 *  *  *  *  *  *  *
Q. Do you pay royalty on every one of the copies you import?—A. Yes; 5 pence.
Q. Whether you sell or not?—A. Yes; exactly. That is the home price.

In deciding appeal No. 70782 of Adams Express Co., which also involved a question as to whether the royalty to be paid should be included as a part of the foreign market value, the claim of the appellants that it should not be so included was sustained; but in that case the evidence clearly established that the royalty did not attach to the unbound sheets and was not paid as a part of the purchase price thereof, and further, that such royalty attached only to the bound book and did not become due and payable until the actual sale of such bound book. The conditions surrounding the purchase of the sheets in issue are, as we have pointed out, altogether different. The royalty attaches to the sheets and is included as a part of the purchase price thereof.

The decision of the general appraiser is therefore affirmed.

In the *Doran* case, *supra*, the facts were very similar to the facts in the instant case, except that therein the importer was required to pay in advance the sum of £750 on account of such royalties. In passing upon the question of whether or not the said royalties were dutiable items, the court said:

The Government contends that said advance payment was made, which claim is disputed by importers. It is not material to this decision, however, whether or not such payment was made, inasmuch as the merchandise imported consists of unbound sheets, and any royalty thereon must necessarily be realized from actual sales of the book in this country.

There is therefore submitted for decision this question of law: Is the royalty part of the dutiable value of these imported sheets?

I think not. Even if it were paid, the royalty has to do solely with the right to print and publish the work in this country, and since Doran & Co. did not print the book any advance payment on account of royalties is clearly a matter foreign to the importation in question in that such payment could possibly form no part of the purchase price of the unbound sheets or be in any sense considered part of the purchase transaction.

Furthermore, royalties invariably depend on certain events happening after importation, in this case on actual sales of the books in this country. It would therefore be improper to add royalties to the entered value of these unbound sheets before the latter had been published. See United States *v.* Leigh (39 Fed. 764).

The decision of the court in the other cited cases is to the same effect as in the cases above quoted.

Counsel for the Government, in his brief filed herein, appears to recognize the controlling effect of the decisions cited by counsel for the plaintiff, but calls attention to the fact that those decisions are based upon old tariff acts, prior to 1922, and insists that those decisions should be carefully reviewed with a view of a reconsideration of the question of dutiability of royalties which are paid by a purchaser, form a part of the selling price, and are paid concurrently with all other costs.

I have given careful consideration to the argument of counsel for the defendant, and I am frank to admit that if it were established by the evidence before me that the royalties in this case were a part of the cost of producing the merchandise as imported, I would unhesitatingly hold such royalties to be a part of the cost of production of the imported merchandise. However, after a careful consideration of the authorities on the subject of royalties being included or not included as a part of the dutiable value of imported merchandise, a consideration of the tariff acts prior to 1922, and a comparison thereof with the Tariff Acts of 1922 and 1930, I am convinced that the question of whether or not royalties should be included as a part of the value of imported merchandise must be determined upon the facts presented in each case, rather than upon the difference in the wording of the different tariff acts.

The facts in the cases cited by counsel for the defendant are distinguishable from the facts in this case, and consequently those authorities are not here applicable.

In the instant case the merchandise as imported consisted of unbound printed sheets to which no royalty in any form attached. After importation and after these unbound printed sheets had been further processed or manufactured to the point where they were no longer unbound printed sheets, but were in fact books, and upon the sale of these books at retail, a royalty did attach. Under the authorities cited it would therefore be improper to add royalties to the cost of production of these unbound printed sheets.

Having, upon a full consideration of the record and applicable authorities, found that the amount paid as a royalty upon the sale at retail of the books produced from the imported unbound printed sheets should not be considered or included as a part of the cost of production of the unbound printed sheets, and accepting as facts the statements contained in the aforesaid stipulation, I find the cost of production, as defined in section 402 (f) (1), (2), (3), and (4) of the Tariff Act of 1930, of the unbound sets of sheets for "Johnny Crow's Garden" to be 11 pence per set of sheets, and for the unbound sets of sheets for "Johnny Crow's Party," I find the cost of production to be 9 pence per set of sheets.   Judgment will be rendered accordingly.