(A.R.D. 229)

UNITED STATES v. { CAVALIER SHIPPING CO., INC.
SODERHAMN MACHINE MANUFACTURING CO.

Third Division, Appellate Term

(Decided November 29, 1967)

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Irving A. Mandel*, trial attorney), for the appellant.

*Sharretts, Paley, Carter & Blauvelt* (*Eugene F. Blauvelt* of counsel) for appellees.

Before RICHARDSON and LANDIS, Judges

RICHARDSON, Judge: The instant application for review was filed by the Government for review of the decision and judgment of a single judge sitting in reappraisement in *Cavalier Shipping Co., Inc., et al.* v. *United States*, 57 Cust. Ct. 652, R.D. 11231, decided October 19, 1966, and holding that cost of production and constructed value are the proper bases of value of merchandise exported from Sweden, and that such values are represented herein by either the entered value, or by the entered value plus packing and delivery charges.

The merchandise here involved consists of Cambio debarking machines covered under two reappraisement appeals which were consolidated for trial. Reappraisement appeal R61/12950 covers six Cambio 35 debarking machines which were exported in 1956 and were invoiced at a unit price of 29,968 Swedish crowns, plus packaging and delivery charges, and were appraised at invoice unit values plus a royalty expressed in U.S. dollars at $1,448.20 each. And reappraisement appeal R61/12951 covers two Cambio 66 debarking machines which were exported in 1959 and were invoiced at a unit price of 56,717.50 Swedish crowns and were appraised at invoice unit values plus a royalty expressed in U.S. dollars in the amount of $1,648.86 in one instance and in the amount of $1,479 in the other instance.

The debarking machines here involved, the function of which is to remove the bark from logs, were manufactured in and exported

from Sweden in an incomplete state by Söderhamns Verkstäder, A.B. of Soderhamn, Sweden, and imported by Soderhamn Machine Manufacturing Co., one of the appellees herein and a subsidiary company of Söderhamns Verkstäder which owned the controlling stock interest at the pertinent times. The merchandise of R61/12950 was "consigned" to the importer, while the merchandise of R61/12951 was "sold outright" to the importer. In both instances, the importing firm which, in its own right manufactures sawmill machinery, including debarking machines, completed manufacture by adding two electric motors and certain other parts manufactured according to American specifications, and sold the same in the domestic market.

The sole question in the case concerns an item of royalty which was omitted from the entered values, added in the appraised values, and then disallowed in the reappraisement proceedings below. It is conceded that there is no foreign, export or United States values for the merchandise and the cost of production in the case of merchandise the subject of R61/12950 and constructed value in the case of merchandise the subject of R61/12951 are the proper bases of value for the merchandise at issue. Appellant contends that the royalty in question is a proper part of the cost of production and constructed values of the merchandise at bar, while appellee contends to the contrary.

The evidence of record consists of (1) an affidavit of Lars Dalman (exhibit 1), president and general manager of Söderhamns Verkstäder, to which is attached copies of agreements concluded in April, 1955 between his company and the inventors of the Cambio debarking machines here involved, a memorandum resolution of Söderhamns Verkstäder releasing Soderhamn Machine, the subsidiary company, from liability for payment of the royalties on debarking machines sold to it by Söderhamns Verkstäder and acknowledging its own liability therefor, and a certificate of the inventors disavowing any liability of the subsidiary company for payment of royalties on Cambio debarking machines; (2) testimony of Gus Jocobson, president of Soderhamn Machine Manufacturing Company, pertaining, among other things, to his company's business relationship with Söderhamns Verkstäder, its business practices, and the payment of royalties on Cambio debarking machines; (3) a report of Treasury Representative Arno Hellthaler dated June 30, 1958 (collective exhibit A) respecting interviews had with Lars Dalman and Goesta Wirtavouri, Söderhamns Verkstäder's sales manager, pertaining to export and foreign values of Cambio debarker machines and invoice practices, to which is attached documents describing the functions and various parts of the Cambio debarkers, parts lists and a copy of a letter sent to Mr. Hellthaler by Mr. Wirtavouri; and (4) a report of Customs Agent William P. Hunton dated January 29, 1960 (collective exhibit B) transmitting copies of various

documents obtained from Soderhamn Machine pertaining to elements of value of the Cambio debarking machines and consisting of a list of total amounts of royalty payments made on imported debarking machines to date, copies of correspondence exchanged between Söderhamns Verkstäder and Soderhamn Machine, copies of the "Cambio" agreement and "development" agreement of April 28, 1955, and a copy of the memorandum of modification of the terms of said "Cambio" agreement, and a copy of the notification of the termination of said "development" agreement sent by Söderhamns Verkstäder to the inventors Brundell and Jonsson.

According to the foregoing evidence it appears that prior to April 28, 1955 Söderhamns Verkstäder, a Swedish corporation engaged in the manufacture of machinery for the lumber and pulpwood industry, was the assignee of patents on a debarking machine called the "Andersson" debarker by virtue of an agreement dated October 15, 1951, between Söderhamns Verkstäder and the inventor-manufacturer and holder of the original patents, Erland Andersson. Subsequent to this patents assignment the "Andersson" debarker was redesigned by Andersson in conjunction with Gunnar Brundell, an engineer, and Karl-Erik Jonsson, works foreman, which latter individuals had also collaborated with Andersson in the development of the "Andersson" debarker. The result of this joint effort produced inventions called, among others, the "Cambio" debarker 35 and "Cambio" debarker 66 for which inventions patent applications had been filed. It seems that the "Andersson" debarker had been designed for the debarking of large diameter logs while the "Cambio" 35 and 66 debarkers were designed to accommodate smaller size logs with maximum diameters of 14″ and 26″, respectively. The rights to the inventions resulting in the Cambio debarkers and patent applications pertaining thereto, among other things, were the subjects of one of the agreements of April 28, 1955 between Söderhamns Verkstäder and the three inventors, called the "Cambio" agreement. And future improvements and new designs for debarkers were the subjects of the other agreement of April 28, 1955 between Söderhamns Verkstäder and inventors Brundell and Jonsson, called the "Development" agreement.

The effect of these April 28, 1955 agreements, out of which the present controversy arises, was the acquisition by Söderhamns Verkastäder of all rights of the inventors to the Cambio debarking machines and to patents thereon, the right to the technical assistance of the three inventors of the Cambio debarkers in the exploitation of the Cambio inventions without additional remuneration, and the right to procure from inventors Brundell and Jonsson future improvements and new designs for debarkers. As consideration the inventors Andersson, Brundell, and Jonsson, and inventors Brundell and Jonsson were

entitled to receive from Söderhamns Verkstäder royalties of 15 and 5 percent respectively of ex-factory invoice prices of Cambio debarkers manufactured and sold by Söderhamns Verkstäder and the subsidiary company Soderhamn Machine. In the case of sales from the latter, "the royalty shall be calculated not on the basis of the subsidiary company's net invoice value but the company's own net invoice value for a corresponding number of machines sold in a corresponding period to buyers in Sweden," and, under the "Cambio" agreement, the inventors are guaranteed minimum annual royalties of 105,000 Swedish crowns.

The debarking machines covered by R61/12950 were exported at a time when the agreements of April 28, 1955 were in effect as originally executed. However, prior to the exportation of the debarking machines covered by R61/12951, the "Development" agreement, which was a year to year contract terminable on 6 months notice, was terminated, effective January 1, 1959; and the "Cambio" agreement, which was terminable on 24 months notice, had been modified to the extent of the formulae it contained for the ascertainment of royalty amounts and royalty rates. Under the terms of the original "Cambio" agreement a royalty of 15 percent was computable, as to the parent company's home market sales and export sales to countries other than the United States, on the basis of net invoice values of such sales. And as to sales of incomplete "Cambio" debarkers made to the subsidiary United States company, the royalty payable under said agreement was computable on the basis of the net invoice values of a comparable number of contemporary sales of complete machines made in the home market by the parent company. However, under the *modification* of said agreement the royalty payable on account of "Cambio" debarkers sold to the subsidiary company was computable on the basis of 6 percent of the net invoice values of the subsidiary's resales of such machines, effective October 1, 1958. And the rate for computation of royalties based on the parent company's sales was, under the *modification*, reduced to 12 percent of the net invoice values of such sales, effective January 1, 1959. The modification also provided for the reimbursement by the parent company to the three inventors of annual outlays or expenses which they would incur in the course of the work to which they were committed, within a maximum annual amount to be fixed at the beginning of each year—the sum of 50,000 Swedish crowns being the amount fixed for such purpose for the year 1959. Such were the changes which had taken place when the debarking machines the subject of R61/12951 were exported.

As previously indicated the merchandise herein, when exported, was incomplete in that it lacked certain parts which were added by the subsidiary company following importation and prior to sale. These parts consisted of two electric motors, motor sheaves, and tension cyl-

inders. They were installed at a cost of between $1,500 and $2,000 for the Cambio 35 debarker and between $2,000 and $3,000 for the Cambio 66 debarker. And certain parts contained in the unfinished machines produced by Söderhamns Verkstäder for export to its subsidiary were made with a view toward meeting American standards not required of machines destined for other markets. It does not appear, however, that any of the parts reserved for manufacture or addition by the United States subsidiary in connection with the merchandise at bar were parts which were covered by the inventions.

With respect to the payment of royalties, Söderhamns Verkstäder (apparently by virtue of its controlling interest in the subsidiary company, there being no privity of contract between the subsidiary company and the inventors or any of them) charged the payment of royalties on the unfinished Cambio debarking machines consigned and sold to the subsidiary company to the subsidiary company and billed that company for payment of same, although such charge is not reflected on the invoices covering the shipment.

The single judge concluded that the royalties covering the imported Cambio debarking machines were not part of the cost of production and constructed values of such merchandise, relying on the decision in *R. J. Saunders & Co., Inc.* v. *United States*, 23 Cust. Ct. 311, Reap. Dec. 7754. In its opinion, the court below stated:

* * * In the instant case, incomplete machines are imported and completed in the United States. The royalty was not payable until the sale of the completed machines.

The instant case parallels the *R. J. Saunders* case. In *R. J. Saunders & Co., Inc.* v. *United States, supra,* the merchandise was imported unbound printed sheets converted into bound books after importation and sold at retail for a price which included a royalty to the author. The court there found as facts, among other things, that no royalty in any form attached to the unbound printed sheets, *per se,* and that no royalty was due until the printed sheets became books and were sold at retail. Consequently, the royalty never became a charge upon the manufacture of the printed sheets.

The value of a royalty is determined by taking the royalty charge ordinarily payable, after sale, for like merchandise. A completed machine sold in Sweden and an incomplete machine exported to the United States are not like merchandise. A royalty based on a percentage of a net invoice amount arrived at by deducting the manufacturing costs of a completed machine sold in Sweden cannot be equated to the net invoice amount realized on merchandise exported to the United States in an incomplete condition and completed and sold in the United States, and would not be a reliable means of determining the value of

the incompleted goods imported into the United States. Thus a royalty on the sale price of a complete machine sold in Sweden can have no bearing upon the cost of production of an incomplete machine exported to the United States. Also, a royalty of 6 percent of the United States sale price of the machine completed in the United States has no bearing on the constructed value of the incomplete machine. Following the reasoning in the *Saunders* case we are of the opinion that the royalty is not a part of either the cost of production or constructed value of the imported incomplete machines, and we find no reversible error in the decision of the trial court.

On the basis of the entire record herein, we find as facts:

1. That the merchandise to which the appeals relate consists of incomplete Cambio debarking machines manufactured by Söderhamns Verkstäder, A.B., in Sweden and imported by Soderhamn Machine Manufacturing Co., an Alabama corporation, in which a controlling stock interest is owned by the Swedish corporation.

2. That at and immediately before the dates of exportation involved herein, neither such nor similar incomplete debarking machines were freely sold or offered for sale to all purchasers in the principal markets of Sweden for exportation to the United States, or for home consumption in Sweden, or were the imported machines offered for sale in the United States in their incomplete condition.

3. That appraisement was made in R61/12950 on the basis of cost of production and with respect to R61/12951, appraisement was made on the basis of constructed value.

4. That appellee does not dispute the basis of appraisement in either case.

5. That in R61/12950 appraisement was made at Sw. Crs. 29,968 each, plus U.S. $1,448.20 each, plus packing and delivery, and in the case of R61/12951, appraisement was made at Sw. Crs. 56,717.50 each, plus U.S. $1,648.86 on machine number 60505, and U.S. $1,479 on machine number 60506, both machines packed.

We conclude as matters of law:

1. Cost of production, as defined in section 402(f), Tariff Act of 1930, is the proper statutory basis for determination of the value of the merchandise subject to R61/12950 and that value is Sw. Crs. 29,968 each, plus packing and delivery charges.

2. That constructed value, as defined in section 402(d), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determination of the value of the merchandise subject to R61/12951, and that value is Sw. Crs. 56,717.50 for each machine, packed.

Judgment will be entered accordingly.