(A.R.D. 142)

UNITED STATES *v.* HENRY A. WESS, INC.

Entry No. 407.

## Third Division, Appellate Term

(Decided February 26, 1962)

*William H. Orrick, Jr.*, Assistant Attorney General (*Daniel I. Auster*, trial attorney), for the appellant.

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the appellee.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: This is an application for review of a decision and judgment of the trial court (Lawrence, J.), holding that cost of production, as that value is defined in 19 U.S.C.A., section 1402(f) (§ 402(f), Tariff Act of 1930), was the proper basis for determining the value of 1,000 mechanical calendars, imported from Denmark, and that such value did not include a royalty and a commission, which were paid by the consignee to the patentee and an independent sales agent, respectively. *Henry A. Wess, Inc.* v. *United States*, 44 Cust. Ct. 747, Reap. Dec. 9724. It is conceded that cost of production is the proper basis of valuation. The only question before this court is whether a fee, consisting of a royalty of 28½ cents and a commission of 7½ cents, should be included as part of such valuation of each calendar.

Cost of production is defined as follows:

[§ 1402(f)] For the purpose of this subtitle the cost of production of imported merchandise shall be the sum of—

(1) The cost of materials of, and of fabrication, manipulation, or other process employed in manufacturing or producing such or similar merchandise, at a time preceding the date of exportation of the particular merchandise under consideration which would ordinarily permit the manufacture or production of the particular merchandise under consideration in the usual course of business;

(2) The usual general expenses (not less than 10 per centum of such cost) in the case of such or similar merchandise;

(3) The cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the particular merchandise under consideration in condition, packed ready for shipment to the United States; and

(4) An addition for profit (not less than 8 per centum of the sum of the amounts found under paragraphs (1) and (2) of this subdivision) equal to the profit which ordinarily is added, in the case of merchandise of the same general character as the particular merchandise under consideration, by manufacturers or producers in the country of manufacture or production who are engaged in the production or manufacture of merchandise of the same class or kind.

The case was submitted upon a stipulation of facts, affidavits, and other documents, which were put into evidence by the parties in support of their respective contentions. Briefly summarized, the essential facts are as follows:

The Kemper Thomas Co. of Cincinnati, Ohio, entered into agreements on July 9, 1952, with Mirovista A/S, and one Gleerup-Moller, under which The Kemper Thomas Co. agreed to purchase a number of mechanical robot calendars from Mirovista A/S at a price of $1.77 for each calendar. In addition to the purchase price, the buyer also agreed to pay a fee of 36 cents on each calendar for the exclusive right to purchase the calendars for export to the United States. From this fee, the buyer agreed to pay a royalty of 28½ cents directly to Gleerup-Moller, the inventor of and holder of a patent on the calendar, and a commission of 7½ cents directly to Hansen & Co. of Toronto, Canada, for the release of certain exclusive North American territorial sales rights, with respect to these calendars, which had previously been granted to Hansen & Co. by the patentee Gleerup-Moller and with respect to which Gleerup-Moller was obligated to pay a like commission to Hansen & Co.

Mirovista A/S is a Danish corporation. Its affairs are governed by three directors, namely, the patentee Gleerup-Moller, his wife, and one other person. The headquarters of the corporation is located in the Gleerup-Moller home, and its export sales are handled either by the patentee, or by an export manager. The manufacturing of parts and the assembling of the calendars is subcontracted by Mirovista A/S to outside manufacturers. Mirovista A/S orders the parts and assemblies, and promotes the product and its sales.

One thousand of these calendars were exported from Copenhagen, Denmark, on September 11, 1952, by Mirovista A/S, invoiced to The Kemper Thomas Co. at the agreed price of $1.77 per calendar. This shipment was entered at the port of Cincinnati, Ohio, on October 8, 1952, at the invoice price. Thereafter, and on or about January 14, 1957, the appraiser advanced the unit value from $1.77 to $2.13, by adding thereto the aforementioned royalty of 28½ cents and commission of 7½ cents. The appraiser regarded the royalty as an item of profit and the commission as an item of general expenses, which were properly includible in the unit value. An appeal for reappraisement from this decision was filed with the collector on January 30, 1957, by the plaintiff importer (the appellee herein) on behalf of the ultimate consignee The Kemper Thomas Co.

The appellee contended and the trial court held that Mirovista A/S was the manufacturer or producer and seller of the mechanical robot calendars, within the meaning of those terms, as used in the statute; that neither the royalty nor the commission constituted any part of the purchase price of the calendars; and that neither of these

items were elements of the statutory cost of production value of the merchandise in question. The Government (the appellant herein) contends that both the royalty and the commission are part of the purchase price and cites as authority for such contention the cases of *General Dyestuff Corp.* v. *United States*, 19 C.C.P.A. (Customs) 309, T.D. 45480; *International Forwarding Co.* v. *United States*, 17 C.C.P.A. (Customs) 86, T.D. 43377; and *Matter of McBride, Nast & Co., London, England* (1917), reappraisement circular No. 27593.

In *General Dyestuff Corp.* v. *United States, supra*, the merchandise consisted of a quantity of fast red salt GL, which was used by the importer's customers together with other ingredients under a process patent for the dyeing of cloth. The appraiser added a sum to the unit value equal to 10 per centum of the basic price of the commodity to arrive at its proper value. This sum represented a royalty paid to the patentee for the use of the commodity under the process patent. The court affirmed the judgment of the Customs Court, which upheld the appraiser's valuation.

In *International Forwarding Co.* v. *United States, supra*, the merchandise consisted of an oxygen-rectification column, which was imported from Germany. The machine was invoiced (consular invoice) at $4,000, on the basis of which price entry was made. The appraiser added a royalty of $1,800 to the invoice price, and additional duties were assessed, pursuant to section 489 of the Tariff Act of 1922. The court affirmed the judgment of the Customs Court, which dismissed the appellant's petition for the remission of the additional duties. The court stated (pp. 89–90):

> There is no question as to the dutiability of the $1,800. It was concededly a part of the purchase price. It was all paid upon the one transaction, and the machine could not have been bought except by the purchaser agreeing to so pay it.

In *Matter of McBride, Nast & Co., London, England, supra*, the merchandise consisted of unbound sheets of a book. In making entry at New York, the importer deducted a royalty of 5 pence from the unit price of 1 shilling, 2 pence. The appraiser advanced the value of this merchandise by adding this 5 pence royalty to the unit price. General Appraiser Fischer affirmed the appraiser's action. In affirming the decision of the general appraiser, the Board of General Appraisers (board No. 1), stated (p. 3):

> * * * The royalty attaches to the sheets and is included as a part of the purchase price thereof.

We do not regard any of these cases as being controlling authority upon the question involved in this case. And their persuasiveness is somewhat diminished, by virtue of peculiar circumstances affecting each case. In the *General Dyestuff Corp.* and the *McBride, Nast &*

*Co.* cases, cost of production was not the basis utilized by the court for determining the proper valuation of the merchandise there involved. In the former case, the merchandise was appraised on the basis of United States value; and, in the latter case, the merchandise was appraised on the basis of foreign value. It does not appear what basis of valuation was used by the court in the *International Forwarding Co.* case in determining the proper dutiable value of the merchandise there involved. Nor does it appear, in that case, that valuation of the merchandise was the principal subject of concern for the court. That case was before the court on a petition for remission of additional duties, in which the main question before the court was the good or bad faith of the importer in connection with the undervaluation of the merchandise for tariff purposes. Moreover, it appears in the record of that case that some sort of a concession may have been made to the effect that the royalty was part of the purchase price, in view of the dearth of evidence, as opposed to theory, with respect to the nature and purpose of the royalty. For these reasons, we decline to rest our decision upon the holdings in these cases.

As we read the record in the instant case, we think the purpose underlying the payment of this fee is clear. The royalty was paid by the consignee to the patentee Gleerup-Moller for the exclusive right to purchase the calendars for export to the United States. However, because of the prior involvement of the Canadian sales agent and of the patentee's commitment to such agent with respect to this territory and for commissions on any sales made therein, the commission was paid by the consignee to the Canadian sales agent for the release of such agent's rights in this territory. As such, we are of the opinion that the royalty and commission were in the nature of a license fee.

Our attention has been called to the decision of the appellate court in *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.,* 39 C.C.P.A. (Customs) 86, C.A.D. 468. We think this case stands upon sounder principle and authority insofar as the precise question before this court is concerned. In *United States* v. *Hensel, Bruckmann & Lorbacher, Inc., supra,* certain printing machines, purchased by the Transkrit Corp. of New York from a Swiss firm which owned the patents, were manufactured and shipped by a German corporation. The purchaser remitted to the German company the sum of 22,000 RM per machine, of which the sum of 10,000 RM per machine was transmitted to the Swiss concern. The latter amount was in payment for certain exclusive territorial rights to purchase and operate the machines. The Government contended that the Swiss concern, and not the German one, was the manufacturer of the merchandise and that the price paid for the territorial rights was a part of the statutory cost of production. The court held (p. 90) :

We conclude that there is substantial evidence of record to establish that the machines in issue were manufactured by the German corporation hereinbefore described and that the cost of production of each involved machine was 12,000 RM and that the license fee in issue was paid in consideration of the exclusive right to purchase the involved machines for export to the United States. Hence the license fee is not an element which may be properly added in computing the dutiable value of the merchandise on the basis of cost of production. [Citing cases.]

The facts in the evidence in the case at bar are analogous to the facts in *United States* v. *Hensel, Bruckmann & Lorbacher, Inc., supra.* We agree with the trial court that Mirovista A/S was the manufacturer or producer and seller of the calendars and that the royalty and commission did not constitute any part of the cost of production of these calendars. There is substantial evidence of record that the royalty was paid to the patentee Gleerup-Moller in his capacity as inventor of the calendar for the exclusive right to purchase the calendars for export to the United States, apart from any consideration which was paid by the consignee to Mirovista A/S, the seller (collective exhibit 3). The evidence of record also clearly establishes the fact that the commission was paid by the consignee to the Canadian sales agent, in lieu of payment to the patentee, solely for the purpose of effectuating the consignee's exclusive rights to market this product in the United States through the release of the Canadian sales agent's claims on this territory (exhibit 2). One searches the record in vain for any evidence that Mirovista A/S ever received or profited from any part of the royalty or commission.

Appellant raises still another argument by which, we assume, appellant endeavors to distinguish the instant case from the application of the holding in *United States* v. *Hensel, Bruckmann & Lorbacher, Inc., supra.* On page 8 of its brief, appellant states:

Technically, Mirovista receives no part of the royalty, but, as already shown, Gleerup who receives the royalty is really Mirovista for all intents and purposes, once the veil of the corporation is shorn away, based on the facts heretofore shown of record.

In urging us to regard Mirovista A/S as the alter ego of Gleerup-Moller, and to pierce the corporate veil of Mirovista A/S in resolving the question before this court, appellant undoubtedly has reference to facts of record which evince a closeness of association between Mirovista A/S and the patentee, Gleerup-Moller, and to the patentee's reference to himself as owner of Mirovista A/S in matters of agreements between the corporation and its customers. In support of its contention, appellant cites the case of *Imperial Paper & Color Corporation* v. *Sampsell*, 114 F. 2d 49.

One of the difficulties with this argument is that the areas of contention between the parties have been somewhat limited by the facts

stipulated to by the parties; and by the evidence adduced by the parties within these areas. We quote from the stipulation, in which the Government participated, the following facts:

(2) That the item marked "A" as aforesaid consists of mechanical calendars made in Copenhagen, Denmark by Mirovista A/S and exported from Denmark to the United States in September, 1952.

\* \* \* \* \* \* \*

(4) That Mirovista A/S was the only manufacturer in Denmark making or producing calendars of the same class or kind as the mechanical calendars marked "A" as aforesaid in the years 1951 and 1952.

This stipulation is barren of any reference to Gleerup-Moller whatsoever, either as manufacturer, seller, or otherwise. Consequently, insofar as appellant now seeks to identify Gleerup-Moller with the making of these calendars, and as being the recipient of the purchase money paid therefor, such argument necessarily involves a compromise or modification of these facts. As such, we would be required to make a ruling on facts which would involve a departure from facts stipulated to by the parties. This we decline to do. Appellee has raised no argument on this application for review which warrants any departure from the stipulated facts. Stipulations of facts entered into between the Government and the importer are as binding upon the Government as they are upon the importer and cannot properly be ignored by the court. *Pacific Trading Co.* v. *United States*, 19 C.C.P.A. (Customs) 361, T.D. 45508.

Neither has appellant convinced us that the law on the subject would require us to "pierce the corporate veil" under the facts of this case with respect to the relationship existing between Gleerup-Moller and Mirovista A/S. In *Imperial Paper & Color Corporation* v. *Sampsell, supra,* which appellant cites, the court declined to "pierce the corporate veil" in order to enable the trustee in bankruptcy of an individual stockholder of a corporation to retain possession of proceeds of the sale of property belonging to the corporation of which the bankrupt was a stockholder, and which had been seized and sold by the trustee as the bankrupt's property. In that case, the court noted that, although the corporation was the bankrupt's tenant, there had been no commingling of the bankrupt's property with the property of the corporation. The court also observed that the corporation's business was kept separate from the business affairs of the bankrupt. On such a state of facts, the court granted relief to the corporation's creditors, stating (p. 52):

\* \* \* To warrant such disregard of the corporation's separate existence it was necessary to show, not only that it was the bankrupt's alter ego, but that to recognize its separate existence would promote fraud, defeat justice or produce inequitable results.

Similarly, in the case at bar, Gleerup-Moller did not disregard the corporate status of Mirovista A/S, or commingle his own assets and affairs with those of the corporation of which he was but one of three directors. The fact that he was closely identified with the affairs of Mirovista A/S and that he seemed to have identified himself on one document as owner of the corporation is insufficient, in our opinion, to require us to disregard the separate existence of Mirovista A/S, even under American law. As pointed out by the court in *Elenkrieg* v. *Siebrecht et al.*, 238 N.Y. 254, 260:

* * * The fact that it is a family corporation, so to speak, is nothing suspicious or illegal. Innumerable are the corporations wherein all the stock is owned by a few members of one family. The fact that one man may own all but a few shares of the stock and be in fact the dominant and controlling factor or the only active manager of the corporation is no evidence in and of itself that the corporation does not exist as a person in the eyes of the law actually owning, operating and controlling property.

Upon a full review of the entire record before us, we are of the opinion that the trial court was correct in its determination of the questions presented and in the reasons assigned by the trial court for its decision.

We, therefore, find as facts:

1. That the merchandise in issue consists of mechanical robot calendars, exported from Denmark to the United States in September 1952.

2. That, at or about the time of exportation, such or similar mechanical robot calendars were not freely offered for sale for home consumption in Denmark, nor for exportation to the United States, nor were they freely offered for sale in the United States.

3. That the importation in controversy was made pursuant to purchase agreements, dated July 9, 1952, and made by and between The Kemper Thomas Co. of Cincinnati, Ohio, the consignee herein, and Mirovista A/S of Copenhagen, Denmark, the exporter herein, and Gleerup-Moller, of Copenhagen, Denmark, the inventor of said calendar and holder of a patent thereon.

4. That cost of production is 13.7809 Danish kroner per calendar.

5. That, in addition to the purchase price, the purchaser agreed to and did pay to Gleerup-Moller the sum of 28½ cents per calendar as a royalty, and to Hansen & Co. of Toronto, Canada, a territorial sales agent, the sum of 7½ cents per calendar as a commission.

6. That the said sums of 28½ cents and 7½ cents did not constitute a part of the purchase price of the calendars, but were payments made in consideration of the said patentee granting to the purchaser, and the said sales agent releasing to the purchaser, exclusive rights in the United States to import the said and similar calendars, and to sell the same therein.

708

We conclude as matter of law:

1. That cost of production, as that value is defined in section 402(f), Tariff Act of 1930, is the proper basis for determining the value of the instant merchandise.

2. That Mirovista A/S, the actual manufacturer or producer of the mechanical robot calendars the subject of this case, is the manufacturer or producer within the meaning of that term, as used in section 402(f)(4), Tariff Act of 1930.

3. That the statutory cost of production per calendar does not include a royalty of 1.96 Danish kroner (28½ cents) and a commission of 0.5176 Danish kroner (7½ cents) paid per calendar.

4. That cost of production of the instant mechanical calendar is as follows:

|  | *Danish crowns each* |
|---|---|
| Cost of materials, fabrication, and labor | 6.9309 |
| Usual general expenses | 4.04 |
| Cost of containers, coverings, and packing | 0.42 |
| Profit | 2.39 |
|  | 13.7809 |

The decision and judgment of the trial court are affirmed, and judgment will be entered accordingly.