(R.D. 11577)

C. J. Tower & Sons of Niagara, Inc. v. United States

Entry No. NF 8915, etc.

(Decided September 12, 1968)

*Donald Hiss, J. V. Siena,* and *John B. Denniston* (*Covington & Burling* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.,* Assistant Attorney General (*Bernard J. Babb,* trial attorney), for the defendant.

Ford, Judge: The cases listed in schedule "A," annexed hereto and made a part hereof, consolidated for the purpose of trial, cover the importation of certain repair parts for can-closing machines and can-making machines, exported by a subsidiary of the actual importer herein, American Can Co.

All of the merchandise was entered after the effective date of the Customs Simplification Act of 1956, 91 Treas. Dec. 295, T.D. 54165, and does not appear on the final list promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521. The merchandise was appraised on the basis of constructed value as defined in section 402(d), Tariff Act of 1930, as amended, *infra,* at the "invoiced unit prices, plus 7.53 percent, plus 36.7 percent profit, pkd., Can. $."

Counsel for the respective parties stipulated that the invoiced value represents cost of materials and fabrication, and other processing employed in producing the merchandise as well as the cost of all containers and coverings. It was also agreed that no amount for general expenses and profits was included in the invoiced price and the increase of 7.53 percent represents an exchange conversion factor, which plaintiff does not contest. The parties have also stipulated that the figure of 36.7 percent added to the appraisement represents 20.8 percent for general expenses and 15.9 percent for profit. The balance of the stipulation insofar as is pertinent provides as follows:

1.  The merchandise involved in the instant appeal for reappraisement consists of can making machine repair parts (hereinafter called MRP) and can closing machine repair parts (hereinafter called CMRP) entered in ten separate entries at Niagara Falls, New York, between the dates of December 21, 1962 and March 27, 1963. * * * The exporter American Can Company of Canada, Limited, Hamilton, Ontario, is a wholly-owned subsidiary of the American Can Company, a domestic corporation, on whose account the merchandise was entered.

\*        \*        \*        \*        \*        \*        \*

5.  CMRP are items of the same general class or kind as MRP in that they are alike in component materials and in the purposes for which used, and they are approximately equal in commercial value. MRP and CMRP are not manufactured and sold in Canada by any other producer, either for consumption in Canada or for export to the United States. MRP are not sold by American Can Company of Canada, Limited, to any customers in Canada. The only sales of CMRP and MRP for export to the United States by the American Can Company of Canada, Limited, are to the American Can Company. CMRP are sold in the ordinary course of trade by American Can Company of Canada, Limited, for home consumption.

6.  This appeal is limited to a challenge to the amounts included by the appraiser for general expenses and profits under Section 402(d)(2) of the Tariff Act of 1930, as amended.

Plaintiff contends the figures representing general expenses and profit, as added by the appraiser, are incorrect since they include certain expenses incurred in sales for the home market which are not incurred in sales to the United States. The elimination of these items, plaintiff claims, will result in a proper appraised value. The pertinent portions of the statutes involved herein read as follows:

Section 402(d) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 944:

(d)  CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

> (1)  the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or

their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

Section 402(g) of the Tariff Act of 1930, 46 Stat. 708, as amended by the Customs Simplification Act of 1956, 70 Stat. 495:

(g) Transactions Between Related Persons.—

(1) For the purposes of subsection (c) (1) or (d), as the case may be, a transaction directly or indirectly between persons specified in any one of the subdivisions in paragraph (2) of this subsection may be disregarded if, in the case of any element of value required to be considered, the amount representing that element does not fairly reflect the amount usually reflected in sales in the market under consideration of merchandise of the same general class or kind as the merchandise undergoing appraisement. If a transaction is disregarded under the preceding sentence and there are no other transactions available for consideration, then, for the purposes of subsection (d), the determination of the amount required to be considered shall be based on the best evidence available as to what the amount would have been if the transaction had occurred between persons not specified in any one of the subdivisions in paragraph (2).

(2) The persons referred to in paragraph (1) are:

\*      \*      \*      \*      \*      \*      \*

(E) Any person directly or indirectly owning, controlling, or holding with power to vote, 5 per centum or more of the outstanding voting stock or shares of any organization and such organization; \* \* \*.

The record herein consists of the testimony of one witness called on behalf of plaintiff and two witnesses called on behalf of defendant as well as seven exhibits received on behalf of plaintiff. Mr. Mix, Director of Accounting Services of the rigid container operation of American Can Co., testified relative to the operation of the company

and an explanation of the various cost accounting forms used by his company, which were offered in evidence.

Mr. Mix testified that during 1962 and 1963 he held the positions of Manager of the Budget Financial Analysis Division of the CANCO Division and Assistant Comptroller of the CANCO Division. In the latter capacity, he was responsible for the machine shop and closing machine station accounting, having functional authority in the maintenance of the books for the Canadian firm. There were six container manufacturing locations in Canada, and machines and repair parts were manufactured at Niagara Falls. Separate facilities are maintained for the service function at Niagara Falls, Montreal, and Vancouver. At the closing machine stations, closing equipment was leased and overhauled and repair parts were sold to leasing customers in Canada. Such parts were sold at Niagara Falls and Vancouver.

The cost accounting records are maintained for the closing machine stations in Canada by the plant accountant on a daily basis. Plaintiff's exhibit 1, "Closing Machine Chart of Accounts," was the system in use during the involved period. The reports of the plant accounts, prepared from postings on ledgers once a month, were forwarded to him at New York and were consolidated into a monthly report and later, a yearly report, plaintiff's collective exhibit 2 is a copy of such form encompassing the Canadian recap for 1963. Said report includes revenue accounts, applicable cost accounts, and cost accounts covering service. On the left side of page 1, the revenue accounts for the sale of equipment, repair parts, conveyors and runway equipment, leasing of closing machines and overhauling sales appear. The right side includes costs in Canada, costs of equipment sales that refer to account 961 for equipment sales. On page 2 on the left hand side appear the cost of repair part sales, costs of conveyor and runway sales, and cost of leasing. On the right hand side of the second page the costs of overhauling and the amount for New York administrative expense allocated to the closing machine and sales engineering costs are shown. The witness identified collective exhibit 3 as representing the consolidated report for closing machine operation for 1962 and stated it was substantially the same as plaintiff's collective exhibit 2.

Revenue relative to the closing machine repair part sales in Canada for 1962 and 1963 is found in account 963. Selling expenses and other general expenses are found in account 973. The latter account did not include New York administrative expense. The charge for New York administrative expense was arrived at based upon a time study conducted in 1961. Mr. Mix identified plaintiff's collective exhibit 4 as a document prepared by the plant accountant at Niagara Falls on a

monthly basis which reflects the profit and loss, the operational analysis and cost accounts. Said exhibit includes an amount of $51,612 for New York administrative expense chargeable to the Niagara Falls machine shop for 1963. Page 2 of this exhibit is identical except that it summarizes the operations of all the machine shops for a period ending December 1962, and the amount for the New York administrative expense appears thereon in the amount of $51,120.

Plaintiff's collective exhibit 6 was prepared under his supervision and covers the previous calendar month and year and includes items of expense incurred by the closing machine operation in Canada as well as New York administrative expense. Plaintiff's exhibit 6, a copy of which is set forth in full, *infra*, was explained by the witness. The exhibit itself is self-explanatory and a further discussion of said exhibit is not deemed necessary.

The witness testified that he was familiar with the transactions at bar and the amounts shown on the invoices representing labor, materials, manufacturing overhead and packing. It appears as though Geneva New York machine shop ordered the imported parts from the Niagara Falls Canadian office. All shipments were made from the Niagara Falls machine shop. By way of clarifying plaintiff's collective exhibit 2, the witness testified that expenses incurred in sales of CMRP appear in account 973; that accounts 973-2-2 through 973-6-4 represent these expenses; that account 973-1 includes the machine shop manufacturing costs and that said manufacturing costs of the articles transferred to the United States were similar to those reflected in account 973-1 and are the figures included in the invoice. Account 973-2-2 covers handling and storing which includes transporting parts within the stations, the cost of the storekeepers, shipping (including boxing of parts) for shipment. Similar costs were incurred in shipments to the United States and were included in the invoiced value. Account 973-3 covers freight. The involved merchandise was shipped f.o.b. Niagara Falls and, hence, no freight was incurred insofar as the Canadian firm was concerned.

Account 973-4 represents tooling expense which, in effect, was not incurred during 1962 and the figure contained therein is an error. Account 973-5 represents the value of obsolete parts scrapped as well as other parts of inventory adjustments. In 1963, the minus figure contained therein is due to the fact that a physical count of the parts on hand exceeded what the book record indicated should be on hand. The scrap category and similar costs were not incurred in connection with the can-making repair parts and can-closing machine repair parts manufactured in Niagara Falls and shipped to the United States.

Account 973-6-1 represents station expense and includes the overhead at the closing machine station such as the prorated portion of the

station supervisor, the time of the invoice clerk, the salaries of the clerical help, space charges out of the machine shop pertaining to repair parts, water, electricity, gas and all of the elements of station overhead. All of such costs were incurred in the transfer of the parts involved herein and are included in the invoice value. Account 973-6-4 represents the portion of New York administrative expense charged to the closing machine station. Said expense appears in account 978 and represents approximately 5 percent of repair part sales.

On cross-examination, Mr. Mix testified that the can-closing machine station and the machine shop at Niagara Falls while reporting separately for accounting purposes are physically located in the same building; that the merchandise involved herein is considered by the witness to be a sale although there is no cash exchange and is recorded as a transfer. The machine repair parts and can-making repair parts made at the Niagara Falls machine shop are stored there and are removed from inventory as needed. The parts involved herein were manufactured for the specific purpose of transfer to the United States. However, some of the parts were removed from inventory to fill the order. The witness did not know how many of such parts came from inventory but believed no more than 10 percent came from inventory. Mr. Mix again reiterated that the merchandise involved herein was transferred at cost with no profit being received by the exporter.

On redirect examination, the witness testified that the costs of the maintenance crew, their foreman and clerical staff attributable to the closing machine, are included in account No. 973-6-1 as stated expense.

Mr. Matthew Murphy, an agent of the Customs Agency Service, testified that he conducted an investigation involving the instant case. He had a conversation with Mr. Mix and others in connection with the manufacture of the involved parts.

Mr. Stanley Tunick, a Certified Public Accountant, holds a bachelor of arts and master of business administration degree from City College of the City of New York, a bachelor of law degree from St. Lawrence University and a doctor of philosophy degree in business from New York University. He had also held the position as professor, professor emeritus and was chairman of the accounting department of City College until his retirement in 1962. He had coauthored a book entitled, "Fundamental Accounting Theory and Practice." He was also consulting editor of the student edition of the Federal Tax Courses and was contributing editor to the New York Tax Course. He was vice chairman of the Board of Certified Public Accountant Examiners for the State of New York and a member of the Society of Certified Public Accountants and had been a director, treasurer, and vice president of the American Institute of Certified Public Account-

ants of the American Accounting Association. Assuming the state of facts as involved herein, the witness was of the opinion that certain expenses incurred in the maintenance of the installation such as the maintenance crew, indirect labor, payroll taxes, maintenance of land, buildings, equipment, depreciation of land, insurance, real property tax, water, power, heat, light, office and shop supplies, telephone, shipping supplies and other administrative expenses are properly included in computing general expenses attributable to the merchandise exported to the United States. Mr. Tunick stated that where certain general expenses are incurred in the operation of an installation which is departmentalized, each operation must bear its portion of expense. Based upon an examination of plaintiff's expenses the witness stated that these costs do not appear to be included except for the sums allocated to all departments and are entitled, "New York Administrative Expense." Referring to plaintiff's exhibit 6, column 7, the witness stated that the percentages of profit were arrived at by a relationship of the amounts under columns, 1, 2, and 3, and the amount of profit under column 6. The expenses appear to have been included in arriving at the profit figure but excluded in arriving at the percentage figure.

On cross-examination, Mr. Tunick testified that maintenance of the installation would not be considered by him as direct factory overhead and that salaries for maintenance crews would be administrative expenses and not be part of direct factory overhead. There are certain expenses which should be allocated to various departments but the witness could not identify any of these expenses from the exhibits except for the New York administrative expense. One method followed by some cost accountants to determine the percentage of general expenses and profits is to use the cost of parts sold as a basis.

The manufacturer and the importer are admittedly related parties as defined in section 402(g), Tariff Act of 1930, as amended, *supra*, and, therefore, such transactions may be disregarded in the determination of constructed value. Since there are no other manufacturers of merchandise of the same general class or kind, plaintiff has attempted to establish the profit and general expenses of the manufacturer with respect to its business in the home market. This, plaintiff contends, would be the best evidence of the percentages of profit and general expenses since such sales are made to unrelated persons. In order to arrive at these percentages, plaintiff introduced exhibit 6, which we deem necessary to set forth in full.

PROFITS AND GENERAL EXPENSES REFLECTED IN SALES OF CLOSING MACHINE REPAIR PARTS BY AMERICAN CAN COMPANY OF CANADA, LIMITED, 1962–1963

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| | Cost of Parts (Acc't 973–1) | Machine Shop Admin. Expenses* | Closing Machine Station Selling Expenses (Acc't 973 Minus Cost of Parts) | Total Cost (Items 1, 2 and 3) | Sales (Acc't 963) | Profits (Sales Minus Total Cost) | Profits As % of Total Cost | Machine Shop Admin. Expenses As % of Total Cost | Closing Machine Station Selling Expenses As % of Total Cost |
| 1962 | $157,198 | $5,345 | $54,621 | $217,164 | $239,189 | $22,025 | 10.1% | 2.5% | 25.2% |
| 1963 | $187,392 | $4,872 | $38,966 | $231,230 | $256,191 | $24,961 | 10.8% | 2.1% | 16.9% |

*A percentage of the cost of parts sold (Item 1, above) equal to the percentage which the allocation of New York Administration and Service costs to the machine shop bears to the total sales and transfers from the machine shop. The relevant percentages are:

| | A | B | B÷A |
|---|---|---|---|
| | Total Machine Shop Sales and Transfers | New York Admin. and Service | |
| 1962 | $1,815,964 | $51,120 | 3.4% |
| 1963 | $1,981,388 | $51,612 | 2.6% |

The figure in column 1 represents the cost for manufacture of the parts less the cost of parts returned. The figures were obtained from account number .973–1 of exhibits 3 and 2 for the years 1962 and 1963, respectively. The balance of the columns in plaintiff's exhibit 6 are self-explanatory.

The initial dispute centers about the sums set forth in column 3 and its equivalent percentages as set forth in column 9. A change of the figure in column 3 will, of necessity, affect the balance of the figures. It is the contention of plaintiff that the figures or percentages in columns 3 and 9 represent certain expenses incurred in the home market which are not incurred in sales to the United States. Under the principles in *United States* v. *Acme Steel Company*, 51 CCPA 81, C.A.D. 841, plaintiff argues that said expenses should not be included in determining constructed value. Defendant, on the other hand, contends the problem under consideration in the *Acme* case, *supra*, is different from that involved herein since the court there was considering export value and not constructed value. Defendant contends that the court in the *Acme* case was concerned with an export value which fairly reflected the market value while in the instant case, the court has to consider the elimination of constructed value which is usually reflected in sales in the market under consideration.

I am of the opinion that expenses which are shown not to be incurred in export sales may be excluded in determining constructed value, if they are not fixed expenses as were involved in *John V. Carr & Son, Inc.* v. *United States*, 52 CCPA 62, C.A.D. 860.

In the case of *Gehrig Hoban & Co., Inc.* v. *United States*, 57 Cust. Ct. 727, A.R.D. 210, the court in considering two different cost of production figures under section 402a(f) (one set of figures representing cost of production for home consumption and the other for export) permitted the use of figures for the cost of export making the following observation:

* * * We are of the opinion that section 402a(f) is concerned with merchandise for export to the United States and not for home consumption. Hence, the higher costs for materials and labor for the domestic product under the circumstances involved herein are not those costs which would ordinarily be considered in the manufacture of articles for export to the United States.

While the foregoing case involved cost of production and the instant case is under the provision for constructed value, the reasoning is equally applicable herein.

The expenses covered by account number 973 are enumerated as follows:

## 973 COST OF REPAIR PART SALES

| 973-1 | Cost of Parts Sold | $201, 402. 85 |
|---|---|---|
| 973-1 | Cost of Parts Returned | 14, 011. 35 |
| 973-2-2 | Handling, Storing, Shipping | 17, 996. 21 |
| 973-3 | Freight | 4, 899. 45 |
| 973-5 | Parts Scrapped | 2, 572. 91 |
| 973-6-1 | Station Expense | 34, 157. 72 |
| 973-6-4 | General Administrative Expense | 2, 580. 60 |
| 973 | Transferred to Overhauling | 18, 094.80 |
| | Total | $226, 357. 77 |

## 973 COST OF REPAIR PART SALES

| 973-1 | Cost of Parts Sold | $157, 449. 72 |
|---|---|---|
| 973-1 | Cost of Parts Returned | 251. 75 |
| 973-2-2 | Handling, Storing, Shipping | 16, 005. 14 |
| 973-3 | Freight | 1, 155. 53 |
| 973-4 | Tooling Expense | 1, 473. 01 |
| 973-5 | Parts Scrapped | 13, 179. 37 |
| 973-6-1 | Station Expense | 30, 609. 30 |
| 973-6-4 | General Administrative Expense | 2, 555. 92 |
| 973 | Transferred to Overhauling | 10, 357. 15 |
| | Total | $211, 819. 09 |

With respect to account 973-2-2, handling, storing, shipping, the record does not sufficiently establish this item as not being incurred in sales to the United States. While the witness testified this item related to the handling, storing, and shipping of items within the warehouse and such expense is not involved in sales to the United States, the record does indicate that about 10 percent of the imported merchandise may have come out of inventory which would be subject to these charges. The court cannot accept as sufficient evidence such indefinite statements as "about 10 percent." Accordingly, the sum covered by account 973-2-2 constitutes an item which is properly part of the dutiable value.

The evidence stands unrebutted as to accounts 973-3 to 973-5 that such expenses were not incurred in sales to the United States. They are, therefore, for the reasons set forth, *supra*, not properly part of the elements of dutiable value.

As to accounts 973-6-1 and 973-6-4, station expense and general administrative expense, respectively, the record appears to be contrary to the stipulation of counsel. Account 973-6-1, according to the record, includes:

This represents the bulk of the overhead at the closing machine station and includes items such as the prorated portion of the station supervisor, the time of the invoice clerk issuing invoices, the salaries

of the clerical people, the space charges out of the machine shop or the container plant pertaining to repair parts, water, electricity, gas, all the elements of station overhead.

Account 973-6-4, based upon the record, includes as follows:

This represents the portion of the New York allocated administrative expense to the closing machine station which we discussed before that pertains to repair parts as distinguished from the other operations of the closing machine station.

Both items, according to plaintiff's witness, are included in the invoiced price. The stipulation, however, was to the effect that all costs covered by section 402(d) (1) and (3), were covered by the invoiced price. The expenses covered by these items are usually general expenses. In the case of *United States* v. *Alfred Dunhill of London, Inc.*, 32 CCPA 187, C.A.D. 305, the court made the following observation with respect to usual general expenses:

In our opinion the "usual general expenses" of a business are the expenses of doing business. This would include in addition to the cost and manipulation of materials, all salaries, wages and commissions, traveling expenses, advertising, rents, taxes on buildings, stationery, stenographic, telephone and telegraph expenses, costs of delivery, depreciation on plant and equipment, and other actual outlays. These are the usual general expenses of business, and profit is calculated on the difference between such expenses and receipts.

This is by no means a complete or comprehensive list but does constitute a good indication of some of the items considered to be general expenses. Therefore, the figures for account numbers 973-6-1 and 973-6-4 are part of general expenses and as such properly part of constructed value notwithstanding the testimony of Mr. Mix that they were included in the invoiced price. I am of the opinion that the statement of the witness, standing alone, is insufficient to overcome the stipulation of the parties under the circumstances. *H. A. Whitacre, Inc.* v. *United States*, 22 CCPA 623, T.D. 47615; *United States* v. *Cartier, Inc.*, 20 CCPA 215, T.D. 45994; *Pacific Trading Co.* v. *United States*, 19 CCPA 361, T.D. 45508; *United States* v. *Henry A. Wess, Inc.*, 48 Cust. Ct. 700, A.R.D. 142.

By virtue of the foregoing, the figures contained in column 3 should include only those figures covered by account numbers 973-2-2, 973-6-1, and 973-6-4, less negative figures of $10,357.15 for 1962 under account 973 (transferred to overhauling), and the sum of $2,572.91 under account 973-5 (parts scrapped), and $18,094.80 under item 973 (transferred to overhauling) for 1963. The new sum for column 3, therefore, amounts to $38,813 for 1962, and $34,067 for 1963. This results in new total figures of $201,356 for 1962 and $226,331 for 1963. The profit is, therefore, changed and becomes $37,833 for 1962 and $29,860 for 1963.

While there is some question as to the method of accounting to be used, it is not the function of the court to determine nor approve a particular process for arriving at the value. The testimony of plaintiff's witness and exhibit 6 establish the use of the total cost (column 4) in arriving at profits, administrative expense and storing expense. Defendant's own witness admitted this is one method used. However, he advanced another method using the cost of the article (column 1) which is also proper. Since both methods are admittedly proper accounting procedure, I must necessarily select one for determination of value in this case. I have utilized the method adopted by the importer herein without approving this procedure or disproving the method advanced by defendant's witness.

Following the accounting procedure set forth in plaintiff's exhibit 6, the chart should now contain the following figures:

## PROFITS AND GENERAL EXPENSES REFLECTED IN SALES OF CLOSING MACHINE REPAIR PARTS BY AMERICAN CAN COMPANY OF CANADA, LIMITED, 1962–1963

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| | Cost of Parts (Acc't 973–1) | Machine Shop Admin. Expenses* | Closing Machine Station Selling Expenses (Acc't 973 Minus Cost of Parts) | Total Cost (Items 1, 2 and 3) | Sales (Acc't 963) | Profits (Sales Minus Total Cost) | Profits As % of Total Cost | Machine Shop Admin. Expenses As % of Total Cost | Closing Machine Station Selling Expenses As % of Total Cost |
| 1962 | $157,198 | $5,345 | $38,813 | $201,356 | $239,189 | $37,833 | 13.8% | 2.6% | 14.3% |
| 1963 | $187,392 | $4,872 | $34,067 | $226,331 | $256,191 | $29,860 | 13.1% | 2.3% | 15.0% |

*A percentage of the cost of parts sold (Item 1, above) equal to the percentage which the allocation of New York Administration and Service costs to the machine shop bears to the total sales and transfers from the machine shop. The relevant percentages are:

| | A | B | |
|---|---|---|---|
| | Total Machine Shop Sales and Transfers | New York Admin. and Service | B÷A |
| 1962 | $1,515,964 | $51,120 | 3.4% |
| 1963 | $1,981,388 | $51,612 | 2.6% |

In view of the foregoing, I find as matters of fact:

1.  The imported merchandise involved herein consists of certain can-making machine repair parts and can-closing machine repair parts exported by American Can Company of Canada, Ltd., from Canada between December 18, 1962, and March 25, 1963.

2.  That said merchandise was appraised on the basis of constructed value as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

3.  The said merchandise does not appear on the final list, T.D. 54521.

4.  The said merchandise was exported from Canada exclusively to the American Can Company of New York.

5.  American Can Company of New York and the exporter, American Can Company of Canada, Ltd., are related persons within the meaning of section 402(g) of the Tariff Act of 1930, as amended, *supra*.

6.  The invoice unit values consist of the cost of materials, fabrication, and other processing employed in producing the merchandise at a time preceding the date of exportation of the merchandise which would ordinarily permit the production of that merchandise in the ordinary course of business, and the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States and do not include general expenses and profit.

7.  No other producer in Canada exports such or similar merchandise to the United States, nor does any other producer sell such or similar merchandise in Canada.

8.  The American Can Company of Canada, Ltd., does not sell can-making machine repair parts in Canada. It does sell can-closing machine repair parts in Canada, principally to customers leasing such machinery.

9.  Can-making machine repair parts and can-closing machine repair parts are merchandise of the same class or kind.

10. The appraiser increased the entered unit values by 36.7 percent for profits and general expenses, intending to reflect profits and general expenses usually reflected on sales of can-closing machine repair parts in Canada by the American Can Company of Canada, Ltd. Of this 36.7 percent, 15.9 percent was intended to reflect profits and 20.8 percent was intended to reflect general expenses.

11. Expenses for freight, tooling, and parts scrapped covered by accounts 973-3 to 973-5 referred to above are not properly part of dutiable value.

12. The record establishes the following profit and expenses for the years 1962 and 1963:

## PROFITS AND GENERAL EXPENSES REFLECTED IN SALES OF CLOSING MACHINE REPAIR PARTS BY AMERICAN CAN COMPANY OF CANADA, LIMITED, 1962–1963

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 |
|---|---|---|---|---|---|---|---|---|---|
| | Cost of Parts (Acc't 973–1) | Machine Shop Admin. Expenses* | Closing Machine Station Selling Expenses (Acc't 973 Minus Cost of Parts) | Total Cost (Items 1, 2 and 3) | Sales (Acc't 963) | Profits (Sales Minus Total Cost) | Profits As % of Total Cost | Machine Shop Admin. Expenses As % of Total Cost | Closing Machine Station Selling Expenses As % of Total Cost |
| 1962 | $157,198 | $5,345 | $38,813 | $201,356 | $239,189 | $37,833 | 13.8% | 2.6% | 14.3% |
| 1963 | $187,392 | $4,872 | $34,067 | $226,331 | $256,191 | $29,860 | 13.1% | 2.3% | 15.0% |

\*A percentage of the cost of parts sold (Item 1, above) equal to the percentage which the allocation of New York Administration and Service costs to the machine shop bears to the total sales and transfers from the machine shop. The relevant percentages are:

| | A | B | B÷A |
|---|---|---|---|
| | Total Machine Shop Sales and Transfers | New York Admin. and Service | |
| 1962 | $1,515,964 | $51,120 | 3.4% |
| 1963 | $1,981,888 | $51,612 | 2.6% |

I, therefore, conclude as matters of law:

1. Constructed value as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, 70 Stat. 944, is the proper basis of value for the merchandise covered by the appeals listed in schedule "A," annexed hereto and made a part hereof.

2. Said value is the invoice price, plus an exchange conversion factor of 7.53 percent, plus the basis for general expenses and profits as shown in findings of fact No. 12.

Judgment will be entered accordingly.