(R.D. 11517)

H. M. YOUNG ASSOCIATES, INC. v. UNITED STATES

Entry Nos. 569718; 575549-1/2; 585303-1/2.

(Decided May 2, 1968)

*West & Egan* (*Lawrence I. West* of counsel) ; *John D. Rode*, associate counsel; for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Arthur E. Schwimmer*, trial attorney), for the defendant.

RAO, Chief Judge: The three appeals for reappraisement listed above, which have been consolidated for purposes of trial, relate to several importations of elastic waistband material exported from West Germany during May and June 1965. This merchandise was invoiced and entered at 62 cents per yard, f.o.b. port of exportation. Appraisement was made upon the basis of constructed value as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at 98 cents per yard, net, packed.

It is the contention of plaintiff that the proper basis of appraisement is either statutory constructed value or export value, as defined in section 402(b) of said tariff act, as amended, *supra*, and that in either event such value is 64 cents per yard. The increase of 2 cents per yard over the invoiced and entered value is alleged to be due to a price increase in effect at the time of exportation.

The pertinent statutory provisions and relevant statutory definitions read as follows:

Sec. 402. VALUE.

(a) BASIS.—Except as otherwise specifically provided in this Act, the value of imported merchandise for the purposes of this Act shall be—

(1) the export value, or

(2) if the export value cannot be determined satisfactorily, then the United States value, or

(3) if neither the export value nor the United States value can be determined satisfactorily, then the constructed value;

except that, in the case of an imported article subject to a rate of duty based on the American selling price of a domestic article, such value shall be—

\*     \*     \*     \*     \*     \*     \*

(b) EXPORT VALUE.—For the purposes of this section, the export value of imported merchandise shall be the price, at the time of exportation to the United States of the merchandise undergoing appraisement, at which such or similar merchandise is freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature and all other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States.

\*     \*     \*     \*     \*     \*     \*

(d) CONSTRUCTED VALUE.—For the purposes of this section, the constructed value of imported merchandise shall be the sum of—

(1) the cost of materials (exclusive of any internal tax applicable in the country of exportation directly to such materials or their disposition, but remitted or refunded upon the exportation of the article in the production of which such materials are used) and of fabrication or other processing of any kind employed in producing such or similar merchandise, at a time preceding the date of exportation of the merchandise undergoing appraisement which would ordinarily permit the production of that particular merchandise in the ordinary course of business;

(2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States; and

(3) the cost of all containers and coverings of whatever nature, and all other expenses incidental to placing the merchandise undergoing appraisement in condition, packed ready for shipment to the United States.

\*     \*     \*     \*     \*     \*     \*

(f) DEFINITIONS.—For the purposes of this section—

(1) The term "freely sold or, in the absence of sales, offered for sale" means sold or, in the absence of sales, offered—

(A) to all purchasers at wholesale, or

(B) in the ordinary course of trade to one or more selected purchasers at wholesale at a price which fairly reflects the market value of the merchandise,

without restrictions as to the disposition or use of the merchandise by the purchaser, except restrictions as to such disposition or use which

(i) are imposed or required by law, (ii) limit the price at which or the territory in which the merchandise may be resold, or (iii) do not substantially affect the value of the merchandise to usual purchasers at wholesale.

\* \* \* \* \* \* \*

(4) The term "such or similar merchandise" means merchandise in the first of the following categories in respect of which export value, United States value, or constructed value, as the case may be, can be satisfactorily determined:

(A) The merchandise undergoing appraisement and other merchandise which is identical in physical characteristics with, and was produced in the same country by the same persons as, the merchandise undergoing appraisement.

(B) Merchandise which is identical in physical characteristics with, and was produced by another person in the same country as, the merchandise undergoing appraisement.

(C) Merchandise (i) produced in the same country and by the same person as the merchandise undergoing appraisement, (ii) like the merchandise undergoing appraisement in component material or materials and in the purposes for which used, and (iii) approximately equal in commercial value to the merchandise undergoing appraisement.

(D) Merchandise which satisfies all the requirements of subdivision (C) except that it was produced by another person.

\* \* \* \* \* \* \*

Plaintiff assumes, and has made an elaborate record to support that assumption, that the advance over the entered value made by the appraiser equals certain royalties and license fees paid by the firm of Jaymar-Ruby, Inc., a customer of plaintiff, for the use of the subject waistband material in the manufacture of men's trousers. But, notwithstanding that the total fees per yard may be the mathematical equivalent of the advance, there is not a scintilla of evidence to show that the appraisement was predicated upon the basis of the invoice unit values, plus the royalty fees. The appraisement is a single unit value of "U.S. $0.98 per yard, net, pkd" which under settled principles of law is not a divisible unit, and can only be upset by proof of every material element of the alternative value claimed by the plaintiff. As the writer of this opinion has stated in *Bud Berman Sportswear, Inc.* v. *United States*, 55 Cust. Ct. 574, Reap. Dec. 11056, affirmed, *United States* v. *Bud Berman Sportswear, Inc.*, 57 Cust. Ct. 733, A.R.D. 211, and 55 CCPA 28, C.A.D. 929:

In this, as in all appeals for reappraisement, by virtue of statutory prescript, a presumption of correctness attaches to the value initially found by the appraiser and the burden rests with the party who challenges that value to prove not only that the appraiser's action was erroneous, but that the claimed value is proper. 28 U.S.C., section 2633; *Brooks Paper Company* v. *United States*, 40 CCPA 38, C.A.D. 495; *Kenneth Kittleson* v. *United States*, 40 CCPA 85, C.A.D. 502; *Kobe Import Co.* v. *United States*, 42 CCPA 194, C.A.D. 593.

In order for a plaintiff to substantiate a value different from that returned by the appraiser, it is ordinarily incumbent upon him to establish every material element included in the statutory basis of value upon which he relies. *Brooks Paper Company* v. *United States, supra.* However, under certain circumstances, as where the appraisement is construed as consisting of separable components, it has been held permissible for a party to challenge one or more of such components, while relying upon the presumption of correctness of all unchallenged elements, when the effect of so doing does not destroy the remainder of the appraisement.

This was the principle established in the cases of *United States* v. *Fritzsche Bros., Inc.,* 35 CCPA 60, C.A.D. 371, and *United States* v. *Schroeder & Tremayne, Inc., et al.,* 41 CCPA 243, C.A.D. 558, and with respect to charges of the kind here involved, this rule was applied in the case of *United States* v. *Dan Brechner & Co.,* 38 Cust. Ct. 719, A.R.D. 71, affirming *Same* v. *Same,* 36 Cust. Ct. 612, Reap. Dec. 8599. It was there held that an appraisement which in effect adopted invoiced ex-factory prices and separately stated additional charges, was severable and that the question of the addition of the charges could be raised without disturbing the presumptively correct ex-factory prices, or requiring that such prices be established in accordance with the applicable statutory definition of value.

This view has been followed in the cases of *United States* v. *Supreme Merchandise Company,* 48 Cust. Ct. 714, A.R.D. 145; *Haddad & Sons* v. *United States,* 53 Cust. Ct. 428, Reap. Dec. 10830; *S. H. Kress & Co., et al.* v. *United States,* 45 Cust. Ct. 566, Reap. Dec. 9853; *United States* v. *Gitkin Co.,* 46 Cust. Ct. 788, A.R.D. 132.

Where, however, the appraisement is not separable, then the burden rests with the party challenging it of establishing every material element in the case, and where an export value different from that returned by the appraiser is claimed, it is incumbent upon the plaintiff to show the price at which such or similar merchandise was freely sold or, in the absence of sales, offered for sale in the principal markets of the country of exportation in the usual wholesale quantities and in the ordinary course of trade. *Valley Knitting Co., Inc. et al.* v. *United States,* 44 Cust. Ct. 599, Reap. Dec. 9627; *Haddad & Sons, Inc.* v. *United States,* 53 Cust. Ct. 423, Reap. Dec. 10825.

Accordingly, the court is not here concerned with what happened to the merchandise after importation between parties in this country not privy to the export-import transaction. Indeed, it seems somewhat surprising, to say the least, that an appraiser in finding a value for imported merchandise predicated upon statutory constructed value would include therein expenses incurred by an unrelated American purchaser of the product in the manufacture of a completely new and different article. See for example *R. J. Saunders & Co., Inc.* v. *United States,* 23 Cust. Ct. 311, Reap. Dec. 7754, and *Cavalier Shipping Co., Inc.,* and *Soderhamn Machine Manufacturing Co.* v. *United States,* 57 Cust. Ct. 652, Reap. Dec. 11231, affirmed, *United States* v. *Cavalier Shipping Co., Inc.,* and *Soderhamn Machine Manufacturing Co.,* 59

Cust. Ct. 850, A.R.D. 229, appeal pending. But that fact has not been established by competent proof. At best it has been suggested by inference and coincidence and, hence, has no bearing upon the issues involved in this case. What must be determined is whether plaintiff has established an export value within the statutory definition thereof or a constructed value differing in amount from that found by the appraiser.

The presumption flowing from an appraisement on the basis of constructed value, in view of the provisions of section 402(a), *supra*, is that there was no export or United States value for the merchandise at bar, and the burden rested with plaintiff to support its claim for export value by establishing every material element in the statutory definition thereof. Under its alternative claim of constructed value, differing in amount from that returned by the appraiser, plaintiff was privileged to rely upon the finding inherent in the presumptively correct appraisement, that there was no export or United States value for such or similar merchandise, *B. A. McKenzie & Co., Inc., et al.* v. *United States*, 47 CCPA 143, C.A.D. 748; *United States* v. *A. N. Deringer, Inc.*, 46 Cust. Ct. 762, A.R.D. 127; *United States* v. *Minkap of California, Inc., by Frank P. Dow Co., Inc., of L.A.*, 48 Cust. Ct. 708, A.R.D. 144.

The evidence addressed to these two phases of the case consists of the testimony of Mr. Henry M. Young, president of the plaintiff company; an affidavit of one Dr. Walter Kalbskopf, general manager of the factory, HCH Kalbskopf, which produced the merchandise at bar, introduced in evidence as plaintiff's exhibit 19; an affidavit of one Dr. Karl Ballendat, managing director of the German firm of Gold-Zack Werke, also a producer of elastic fabrics, introduced into evidence as plaintiff's exhibit 20, and several communications between associate counsel for plaintiff and various German manufacturers of narrow woven elastic fabrics, received in evidence as plaintiff's collective exhibit 21.

According to Mr. Young, the elastic waistband material at bar, samples of which are in evidence as plaintiff's exhibit 1 (without lettering) and plaintiff's exhibit 2 (with certain lettering), was purchased from the Kalbskopf mill at the invoice price. The two companies had been doing business for several years and were not related. After importation, all of the waistband material of the type of the exhibits imported by plaintiff was sold to Jaymar-Ruby, Inc., at a price which included purchase cost, import costs, duty costs, usual expenses, and profit, and there was no relationship of any kind between said companies.

Mr. Kalbskopf's affidavit sets forth that he is thoroughly familiar with all phases of the manufacture and sale of his company's produc-

tion of elastic fabrics, including all bookkeeping records and elements of cost. It describes the merchandise at bar as a "special unique kind of elastic fabric," of peculiar construction, and asserts that the only other German producer of this type of elastic webbing was the Gold-Zack Werke. According to this affiant, his company's entire production of this material from February 25, 1963, to the date of verification was sold to H. M. Young Associates at the following prices:

May 10, 1965 to date – $0.64 per yard, F.O.B. German Port
October 29, 1963 to May 9, 1965 – $0.62 per yard, F.O.B. German Port
February 25, 1963 to October 28, 1963 – $0.63 per yard, F.O.B. German Port

The prices were the same regardless of quantity. There were no restrictions on the use or disposition of the merchandise, nor any relationship of any kind between these two companies. The transactions were at arm's length. This material was not sold either for home consumption in Germany or for exportation to other countries, but the prices charged H. M. Young Associates, Inc., were prices his company was willing to receive in the ordinary course of trade. Such prices represented the fair value of the fabric, in the opinion of the affiant, and were sufficient to cover all costs of manufacture including general expenses and ordinary profit. They were also stated to be comparable to prices for elastic fabric "very similar in design, appearance and use and which was made of substantially the same materials" sold to plaintiff prior to February 25, 1963.

Cost of production figures for the three price periods to which the affiant alluded showed general expenses and profit decreasing slightly from a high of 15⅖ cents per yard during the earliest time to a low of 14½ cents per yard. According to the affiant, these amounts reflected the expenses and profit usually added in previous shipments to plaintiff as well as by other manufacturers of merchandise of the same class or kind. He predicated this latter conclusion upon his familiarity with market conditions in the trade and prices of his competitors, but stated that it would be indiscrete and "contrary to good business manners," to solicit such information from other companies in the field.

Dr. Karl Ballendat, managing director of Gold-Zack Werke, who also averred that he was thoroughly familiar with market conditions respecting the production and sale of elastic fabrics in Germany including his own company's entire operations, stated that one of its products was a unique type of elastic fabric called New Belt. By reason of its special construction, it differed from any other elastic fabric manufactured by his firm or by any other company in Germany with the exception of HCH Kalbskopf.

Dr. Ballendat's company sold about 65 percent of its production of this special elastic fabric for home consumption in Germany. Aside from sales of small quantities to customers in Austria, Denmark, and the Netherlands, the balance was sold for exportation to two American purchasers. They were Jaymar-Ruby, Inc., of Michigan City, Indiana, and White Stag Manufacturing Co. of Portland, Oregon. By reason of quantity purchases and forward commitments by Jaymar-Ruby, Inc., and its strong financial condition, as against special promotional activities in behalf of White Stag, the price to the former after February 1964, was 284 DM per 100 meters, to the latter, 330 DM per 100 meters, both less 3 percent 10 days, f.o.b. German port. These factors also influenced prices on sales for exportation to other countries than the United States, which prices were generally higher.

Since April 1, 1961, sales for domestic consumption in Germany were made to manufacturers of slacks at a uniform price of 3 DM 75 pf. per meter.

According to this affiant, sales for exportation to the United States were arm's length transactions with no relationship between buyer and seller. The prices were freely offered wholesale prices, but whereas transactions with White Stag were stated not to be in the ordinary course of trade because in small quantities and at prices which included sums for special services, the prices to Jaymar-Ruby, Inc., were asserted to be such as fairly reflect the market value of this material and were prices his company was willing to receive. This affiant further stated that no offers of sale for exportation to the United States were made to any other customer than those mentioned during the period since January 1963.

The following were stated to be the company's cost of production figures:

|  | 1962 – Feb. 1964 | After Feb. 1964 |
|---|---|---|
| Cost of materials and fabrication | DM2.14 | DM1.86 |
| General expenses | DM0.71 | DM0.61 |
| Profit | DM0.45 | DM0.31 |
| Cost of containers and coverings | DM0.06 | DM0.06 |
| TOTAL | DM3.36 | DM2.84 |

The amounts for general expenses and profits were said to be amounts equal to those usually incurred by German manufacturers of elastic of the same general kind.

Plaintiff's collective exhibit 21, as hereinabove indicated, consists of copies of letters written by associate counsel for plaintiff to various

German manufacturers of elastic fabrics seeking information concerning the amount or percentage of usual general expenses and profit, together with some replies which, when responsive, indicated general expenses of 10 to 15 percent and profits ranging from 5 to 15 percent.

Much of counsel's argument to the effect that the record establishes a constructed value of 64 cents per yard, as claimed, is predicated upon the inference that the appraised value is a composite of the invoice unit price of 62 cents per yard, plus allegedly established royalty fees of 36 cents per yard. A constuctive separation of these two elements is urged, in view of the apparent coincidence of the total appraised value and the sum of the stated figures, to the end that the proof of the inapplicability of the royalty fees, coupled with the alleged acceptance by the appraiser of the invoice price, establishes the correctness of the latter value subject to the conceded addition of 2 cents per yard.

That this is not a valid thesis, the court's review of settled principles of law has previously indicated. Nor does it appear that the evidence suffices to establish either a statutory export value or a constructed value other than that returned by the appraiser.

As pointed out by counsel for defendant, the evidence does not show that such or similiar merchandise was "freely sold or in the absence of sales, offered for sale," to all purchasers at wholesale, or to one or more selected purchasers at wholesale, at a price which fairly reflects the market value of the merchandise within the intendment of section 402(b) and 402(f)(1)(A) and (B) of the valuation statute. It is clear that neither the subject elastic webbing nor the allegedly similar fabric was freely offered to all purchasers. In the one instance plaintiff bought the entire output, in the other sales for exportation to the United States were made only to Jaymar-Ruby, Inc., or White Stag. But in neither case did the buyer fit the category of "selected purchaser," which term has been construed as embracing situations where the seller expressly restricts his sales to one or more specifically designated purchasers. *Aceto Chemical Co., Inc.* v. *United States*, 51 CCPA 121, C.A.D. 846; *Haddad & Sons, Inc.* v. *United States*, 54 Cust. Ct. 600, Reap. Dec. 10942, affirmed, 56 Cust. Ct. 792, A.R.D. 205. Although sales of such merchandise were made to one purchaser and sales of similar merchandise were made to two, the record does not disclose that either seller would have refused to sell to other buyers. The fact that a seller during a partciular period sells to only one purchaser does not in and of itself make that purchaser a selected purchaser. *Panmed Pharmaceuticals, Inc.* v. *United States*, 56 Cust. Ct. 689, R.D. 11163; *Haddad & Sons, Inc., supra.*

Since plaintiffs evidence is predicated upon the fact that the merchandise at bar is of exclusive construction, not similar to any other

elastic webbing than that produced by Gold-Zack Werke, there is no other category of merchandise to which attention need be directed. Plaintiff's failure to show that such or similar merchandise was "freely sold or in the absence of sales, offered for sale" constitutes an omission to establish a material element in the statutory definition of export value, and, therefore, statutory export value has not been proven.

It remains to be determined whether the record supports a finding of constructed value, different from the appraised value.

One of the elements which the statute requires in the computation of constructed value is:

an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind as the merchandise undergoing appraisement which are made by producers in the country of exportation, in the usual wholesale quantities and in the ordinary course of trade, for shipment to the United States

This provision has been construed to require proof of the general expenses and profit of producers of merchandise of the same class or kind, unless the manufacturer involved is the sole producer or a showing that diligent efforts to obtain such proof have been unavailing. *United States* v. *Jovita Perez*, 36 CCPA 114, C.A.D. 407; *United States* v. *Berben Corporation*, 49 Cust. Ct. 497, A.R.D. 147; *Meadows Wye & Co., Inc.* v. *United States*, 58 Cust. Ct. 746, R.D. 11316.

The instant record reveals the existence of at least four, possibly five, producers of elastic fabrics, including the exporter. The affidavit of Kalbskopf sets forth amounts for general expenses and profit which equate to approximately 30.5 percent of the cost of materials and fabrication. Ballendat's affidavit shows general expenses and profit which compute to approximately 49 percent of the cost of materials and fabrication. The information supplied by manufacturer Hussy & Kunzli appears in the form of percentages as follows:

1) General expenses – approximately 12% – 14%
2) Profit – approximately 15%

D. P. Muller's reply also sets forth percentages to wit: General expenses about 14 – 15 percent, profit about 10 percent. Another firm, not mentioned in Kalbskopf's affidavit, namely Kaiserslauterer Verbandstoff-Fabrik, Emil Bender G.m.b.H., reported costs of material and fabrication of about 85 percent, general expenses of about 10 percent, and profit of about 5 percent.

Aside from Ballendat's affidavit, the communications from the other manufacturers are all in the form of letters, admitted at the time of trial, "merely [in] an effort to show that due diligence was exercised in an attempt to ascertain such information." It is clear that they

possess no evidentiary value of the substantive matter therein contained. No one of them shows the position or authority of the correspondent, nor the period to which the percentages relate, nor in what manner the percentages are computed, nor whether the stated percentages applied to the usual wholesale quantities or were in the ordinary course of trade in connection with shipments to the United States.

Moreover, as observed by counsel for the defendant, although these letters were received long prior to trial no attempt to convert the information contained therein to evidentiary form or substance appears to have been made, cf. U.S.C. § 2633.

Under these circumstances, it cannot be concluded that the record contains satisfactory evidence of general expenses and profits "usually reflected in sales of merchandise of the same general class or kind," nor, therefore, of a constructed value different from the appraised value.

By reason of the foregoing, the court makes the following findings of fact:

1. The merchandise covered by these appeals for reappraisement consists of a waistband elastic fabric of a special construction exported from West Germany during May and June of 1965.

2. Said merchandise was invoiced and entered at 62 cents per yard, but is claimed to be valued as 64 cents a yard, either on the basis of export value, as defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, or on the basis of constructed value, as defined in section 402(d) of said act, as amended.

3. This merchandise was appraised at 98 cents per yard, net packed, on the basis of statutory constructed value.

4. The record lacks adequate proof to show that on or about the dates of exportation here involved such or similar merchandise was freely sold or, in the absence of sales, offered for sale in the principal markets of West Germany for exportation to the United States.

5. Such or similar merchandise was not sold or offered for sale for domestic consumption in the United States within the contemplation of the statutory definition of United States value.

6. At all pertinent dates of exportation there were other manufacturers in Germany of narrow elastic fabrics of the same class or kind as that here involved.

7. The record does not sufficiently show general expenses and profit equal to that amount usually reflected in sales of merchandise of the same general class or kind made by producers for shipment to the United States in the usual wholesale quantities and in the ordinary course of trade.

8. Plaintiff has failed to negate the presumptively correct value returned by the appraiser.

The court, therefore, concludes that:

1. Export value, as defined in said section 402(b), as amended, has not been shown to exist for the merchandise at bar.

2. The record lacks competent proof of a constructed value different from the appraised value.

3. Constructed value, as defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for determining the value of the merchandise here involved, and such value is the appraised value.

Judgment will be entered accordingly.