5. That the merchandise was appraised at $1.06 per dozen, net, packed, which is equivalent to the f.o.b. port of exportation price.

6. That the record establishes that the appraiser included in his appraised value the ex-factory unit price plus a proportionate share of the export charges, including a buying commission of 5 percent on the ex-factory price.

7. That during the period involved herein, the plaintiff employed Tosho Co., Ltd., as its agent to assist in the purchase of merchandise and to perform other services in connection with the shipment and payment therefor.

8. That for such services, plaintiff paid Tosho Co., Ltd., a commission of 5 percent on the ex-factory price.

I conclude as matters of law:

1. That export value as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That in view of the evidence showing that the appraiser made his appraisement on the basis of the invoice unit price plus export charges which included a 5 percent commission, the appraisement is deemed to be separable and the invoice unit price together with the unchallenged charges are clothed with a presumption of correctness.

3. That the 5 percent commission paid by plaintiff to the Tosho Co., Ltd., was a *bona fide* buying commission which formed no part of the value of the merchandise.

4. That the export value for said merchandise is the appraised value less a commission of 5 percent on the ex-factory price.

Judgment will be entered accordingly.

(R.D. 11640)

CAROLINA MFG. CO. *v.* UNITED STATES

Entry No. 954244.

(Decided March 20, 1969)

*James G. McGoldrick* for the plaintiff.

*William D. Ruckelshaus,* Assistant Attorney General (*Brian S. Goldstein,* trial attorney), for the defendant.

RAO, Chief Judge: The merchandise involved in this appeal for reappraisement consists of cotton tablecloths exported from Japan and entered at the port of New York. They were invoiced at an ex-factory unit value of $5.15 per dozen plus listed export charges. Entry was made at the total invoice amount less charges for packing and labels. The merchandise was appraised at $5.70 per dozen, net, packed.

It was stipulated at the trial that the merchandise does not appear on the Final List promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521, and that export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis of appraisement. Plaintiff claims that the appraised value includes a commission which is a *bona fide* buying commission and not properly part of the export value.

The special customs invoice received in evidence at the trial as part of the official papers gives the ex-factory price of the merchandise as $5.15 per dozen and lists as export charges: carton and packing, cost of label, inland freight, storage, insurance, hauling and lighterage, and buying commission. The total ex-factory price and charges for 1,000 dozen is given as $5,700.

Written in red ink on the invoice are the words "app'd $5.70 net pkd ADV."

At the trial, Valentine C. McCabe, customs examiner, testified that he made the advisory appraisement and that he had had the invoice documents before him at that time. He noted that 1,000 dozen articles were covered by the invoice and that the sum total of $5,700 included certain invoice export charges. He stated that in the absence of any

further information, he appraised the merchandise by dividing 1,000 dozen into $5,700 and arrived at $5.70, net, packed, as the appraised value. This value was predicated on an f.o.b. price. He did not recommend to the appraiser that he find the alleged buying commission noted on the invoice to be an amount actually paid to buying commissionaires as a buying commission.

It was stipulated that the advisory appraisement by the examiner was adopted by the appraiser as the official appraised value.

There was received in evidence as exhibit 1 a copy of an agreement between Carolina Manufacturing Co., Inc. (hereinafter called Carolina), and The Tosho Co., Ltd. (hereinafter called Tosho), dated January 1, 1962. Mr. Sam E. Haddad, president of Carolina, testified that the agreement had been signed by Eli Haddad, his father, now deceased, who was then president of Carolina, and by Yasuo Namekawa. The copy was made about January 1963 under his direction.

The agreement contains the following:

> Carolina Manufacturing Co., Inc. hereby appoints the firm of the Tosho Co., Ltd. (Representative: YASUO NAMEKAWA) as a Buying Agent in Japan.
>
> The Tosho Co., Ltd., must visit manufacturers in Japan, collect samples, submit those samples to Carolina Manufacturing Co., Inc., and to report regularly about the market situation quoting prices at which the merchandise can be purchased.
>
> Upon instructions from Carolina Manufacturing Co., Inc. the Tosho Co., Ltd., will place orders with manufacturers, inspect merchandise, and arrange shipment.
>
> The Tosho Co., Ltd., will be entitled to a buying commission of 5%.

The agreement also directed Tosho to quote prices f.o.b. Japanese port, including the buying commission. The invoices were to be made out on the basis of ex-factory prices and to specify all charges.

There was also received in evidence as exhibit 2 in this case an affidavit of Yasuo Namekawa, president of Tosho. This is the same affidavit as was received in evidence in *Reliance Intercontinental Corp.* v. *United States*, R63/3235, 62 Cust. Ct. 845, R.D. 11639. It is stated therein that Mr. Namekawa has been president of Tosho for 15 years and has personal knowledge of all its business affairs. As chief managing officer, it was his duty to supervise the business and commercial relationships and affairs of the company. He stated that Tosho has been engaged in the export and import business in Japan for many years; that it makes purchases of Japanese products and sells them for export to the United States, and that it also acts as agent on behalf of United States buyers for the purchase of Japanese products and as a shipping agent.

Insofar as this case is concerned, affiant stated that the buying agency agreement between Tosho and Carolina was similar to one between Tosho and Haddad & Sons, Inc., and originated at about the same time. According to the affidavit, the agreement with Haddad & Sons, Inc., was made on February 7, 1951. By it, Tosho was authorized to act as buying agent for the Haddad firm, to place orders on written authorization, to make inspection of goods, to accept delivery after approving the quantities and the quality of the goods, and to arrange shipments to the United States. For these services Tosho was originally paid a commission of 3 percent of the total ex-factory price of Japanese goods purchased by the Haddad firm. That rate was later increased to 5 percent of the total ex-factory price of purchases.

The affidavit states that the services rendered by Tosho for the account of the named principals included the services of its personnel in translating for visiting buyers, handling all details incident to delivery of merchandise from the manufacturers, inspecting it, arranging for its shipment, gathering samples, obtaining quotations, and placing orders on instruction of the principal.

The affidavit also states that in every instance where Tosho acted for a principal and signed a customs invoice, it had no interest in the sales price paid to the seller and was compensated solely by the invoiced buying commision.

It appears from the official papers that Mori Handkerchief Co., Ltd., was the maker and seller of the instant merchandise and that Tosho was the shipper.

Mr. Sam E. Haddad, who has been president of Carolina since July 6, 1966, testified that prior to that time his father, Eli Haddad, had been president of the company and he had been secretary-treasurer, and had worked closely with his father. He stated that Tosho and Carolina had done business under the agreement (exhibit 1) since its inception and that it had never been cancelled. He himself had never made any business trips to Japan but he had met Mr. Namekawa in New York and had done business with him there. He had never negotiated with Mori Handkerchief Co., Ltd., with regard to the instant merchandise. He stated that his duties revolved around the sale of merchandise in the United States; that he was aware of the merchandise being ordered through meeting buyers, getting their views, working alongside his father, bringing his attention to items, sizes and colors that the firm should or should not purchase. He participated in conferences with his father which were held in the regular course of business. His father visited Japan two or three times a year and carried out the decisions made with respect to the type of merchandise desired by the company.

As in *Reliance Intercontinental Corp.* v. *United States, supra,* two questions are presented for determination: First, whether the appraisement is separable so that plaintiff may rely on the presumption of correctness as to all elements of value except the contested item, and second, whether the record establishes that the commission paid to Tosho was a *bona fide* buying commission and thus not properly a part of dutiable export value.

In the cited case, it was held that where the appraisement as noted on the invoice was at a unit value, net, packed, but the testimony of the examiner established that it was made up of the invoice unit price plus a proportionate share of the charges, including a buying commission, the appraisement is separable and plaintiff may challenge the inclusion of the commission as a part of the dutiable export value, while relying upon the presumption of correctness as to the other elements of value. *United States* v. *Gehrig, Hoban & Co., Inc.,* 54 CCPA 129, C.A.D. 924; *United States* v. *Chadwick-Miller Importers, Inc., et al.,* 54 CCPA 93, C.A.D. 914; *United States* v. *Bud Berman Sportswear, Inc.,* 55 CCPA 28, C.A.D. 929.

In the instant case the appraisement as noted on the invoice was at a unit value, but the testimony of the examiner indicates that it was arrived at by dividing the total price of the merchandise, $5,700, which included all the export charges, by the total quantity of 1,000 dozen and arriving at a price of $5.70 per dozen. Obviously, this included the buying commission, the amount of which is stated on the invoice and amounts to 5 percent of the total invoiced ex-factory price. Under these circumstances, the appraisement may properly be treated as separable and the plaintiff may challenge the inclusion of the commission as a part of the dutiable value, while relying upon the presumption of correctness as to the other elements of value. *Bud Berman Sportswear, Inc.* v. *United States,* 55 Cust. Ct. 574, Reap. Dec. 11056, aff'd *United States* v. *Bud Berman Sportswear, Inc.,* 57 Cust. Ct. 733, A.R.D. 211, aff'd 55 CCPA 28, C.A.D. 929; *United States* v. *Shalom & Co.,* 57 Cust. Ct. 767, A.R.D. 216, appeal dismissed January 10, 1968; *United States* v. *Gehrig, Hoban & Co., Inc., supra.*

A *bona fide* buying commission charged for handling merchandise is not a part of dutiable value. *United States* v. *S. S. Kresge Co. et al.,* 26 CCPA 349, C.A.D. 39; *United States* v. *Nelson Bead Co.,* 42 CCPA 175, C.A.D. 590; *Stocker & Yale, Inc.* v. *United States,* 60 Cust. Ct. 881, R.D. 11533.

Commissions paid by the purchaser to agents for services rendered in procuring the merchandise, inspecting and packing goods, arranging for shipment and acting as a paymaster for account of the buyer, no part of which commissions inure to the benefit of the seller, are buying commissions. *United States* v. *Nelson Bead Co., supra; United*

*States* v. *Gitkin Co.*, 46 Cust. Ct. 788, A.R.D. 132; *Lollytogs, Ltd.* v. *United States*, 55 Cust. Ct. 608, Reap. Dec. 11073; *United States* v. *Supreme Merchandise Company*, 48 Cust. Ct. 714, A.R.D. 145.

Plaintiff claims that the record establishes that Tosho is the buying agent of the importer and that the 5 percent commission paid to it is compensation for services rendered to the importer and constitutes no part of the dutiable value of the merchandise. Defendant contends that the record is insufficient, claiming that the agreement, exhibit 1, has not been properly identified and should not have been received in evidence, and that the affidavit of Mr. Namekawa and the testimony of Mr. Haddad did not establish the existence of a *bona fide* buying agency.

As to the agreement, the witness Haddad identified the signature of his father with whom he had worked closely and that of Mr. Namekawa, whose signature he had often seen on documents received by his firm in the regular course of business. Such uncontradicted evidence is sufficient to authenticate a document. McCormick on Evidence, section 189; 20 Am. Jur., Evidence, section 838.

It appears from the agreement and the affidavit that Carolina appointed Tosho as its buying agent and that Tosho performed the usual services of a buying agent for which it received a commission of 5 percent on the ex-factory price of the merchandise. Although the affidavit of Mr. Namekawa points to an agreement having been made with Carolina earlier than January 1, 1962, that is not material here since the present transaction occurred after the date of the agreement, and the witness testified that the agreement had never been cancelled. Mr. Namekawa set forth the services which his firm performs for its principals, including Carolina. While Mr. Sam Haddad had not visited Japan and personally negotiated for the purchase of this merchandise, he had worked closely with his father who did visit Japan and made the purchases decided on by the firm, in which decisions his son had taken part. There is no reason to suppose that the present purchases were made in any other way than in the regular course of business followed by Carolina and Tosho. According to the official papers, the merchandise was shipped by Tosho to Carolina.

In the absence of contradictory evidence, the record presented here is sufficient to establish that Tosho was a *bona fide* buying agent. Its commission, therefore, is not properly a part of dutiable export value.

On the record presented, I find as facts:

1. That the merchandise involved herein consists of cotton tablecloths exported from Japan and entered at the port of New York on March 6, 1963.

2. That the merchandise does not appear on the Final List promulgated by the Secretary of the Treasury, 93 Treas. Dec. 14, T.D. 54521.

3. That the merchandise was appraised on the basis of export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

4. That the merchandise was invoiced at an ex-factory unit value of $5.15 per dozen plus listed export charges; that entry was made at the total invoice amount less charges for packing and labels.

5. That the merchandise was appraised at $5.70 per dozen, net, packed, which is equivalent to the f.o.b. port of exportation price.

6. That the record establishes that the appraiser included in his appraised value the ex-factory unit price plus a proportionate share of the export charges, including a buying commission of 5 percent on the ex-factory price.

7. That during the period involved herein, the plaintiff employed Tosho Co., Ltd., as its agent to assist in the purchase of merchandise and to perform other services in connection with the shipment and payment thereof.

8. That for such services, plaintiff paid Tosho Co., Ltd., a commission of 5 percent on the ex-factory price.

I conclude as matters of law:

1. That export value, as that value is defined in section 402(b) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That in view of the evidence showing that the appraiser made his appraisement on the basis of the invoice unit price plus export charges which included a 5 percent commission, the appraisement is deemed to be separable and the invoice unit price together with the unchallenged charges are clothed with a presumption of correctness.

3. That the 5 percent commission paid by plaintiff to the Tosho Co., Ltd., was a *bona fide* buying commission which formed no part of the value of the merchandise.

4. That the export value for said merchandise is the appraised value less a commission of 5 percent on the ex-factory price.

Judgment will be entered accordingly.