(R.D. 11695)

H. M. YOUNG ASSOCIATES, INC. *v.* UNITED STATES

Entry Nos. 569718; 575549-1/2; 585303-1/2.

(Decided on rehearing [R.D. 11517] February 18, 1970)

*West & Egan* (*Lawrence I. West* of counsel); *Rode & Qualey* (*Ellsworth Qualey* of counsel) associate counsel; for the plaintiff.

*William D. Ruckelshaus*, Assistant Attorney General (*Steven R. Sosnov* and *Bernard J. Babb*, trial attorneys), for the defendant.

Rao, Chief Judge: When these appeals for reappraisement were originally before me, a decision and judgment were entered sustaining the appraised value. *H. M. Young Associates, Inc.* v. *United States*, 60 Cust. Ct. 842, R.D. 11517 (1968). Subsequently a motion for rehearing was granted and additional evidence was presented.

The merchandise consists of elastic waistband material exported from West Germany in May and June 1965 and invoiced and entered at 62 cents per yard, f.o.b. port of exportation. It was appraised on the basis of constructed value, as that value is defined in section 402(d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at 98 cents per yard, net, packed.

According to the record, the merchandise consisted of a particular type of elastic waistband material manufactured by the firm of HCH Kalbskopf of West Germany and sold to H. M. Young Associates, Inc., of New York. It was resold to Jaymar-Ruby, Inc., of Indiana, which firm used it in the manufacture of trousers pursuant to a patent of which it is a licensee.

Plaintiff originally claimed that the proper basis for appraisement was either constructed value or export value, as those values are defined in section 402 of the Tariff Act of 1930, as amended, and that such value was 64 cents per yard. The increase of 2 cents per yard over the invoiced and entered value was alleged to be due to a price increase in effect at the time of exportation. Plaintiff has now limited its claim to constructed value at 64 cents per yard.

In both the original case and on rehearing, plaintiff contended that the difference of 36 cents between the invoice price and the appraised value represented royalty and trademark certification payments and that such payments were not part of dutiable value.

I previously found that the record presented did not show that the appraisement was predicated upon the basis of the invoice unit value plus the royalty fees. I held that the appraisement was not separable

and that plaintiff was required to establish every material element of either export value or constructed value. The record was found insufficient to establish export value since it did not appear that the merchandise was freely offered to all purchasers nor that the buyers were selected purchasers within the meaning of the statute. As to constructed value, it was held that plaintiff had failed to prove the general expenses and profit of manufacturers of merchandise of the same class or kind or that diligent efforts to obtain such proofs had been unavailing. *H. M. Young Associates, Inc.* v. *United States, supra.*

At the second trial, plaintiff called Thomas F. Sweeney, import specialist, who testified as follows: In the course of his duties he examines, classifies, and values elastic fabrics of the kind in issue. As the line examiner, he is ordinarily responsible for the appraisement of this type of merchandise. In this case he instructed the examiner at the airport as to the basis on which he was to make appraisement. The invoice price on each invoice was 62 cents per yard and the merchandise was appraised at 98 cents per yard on the basis of constructed value. Mr. Sweeney said that at the time he made his appraisement he had received copies of a patent royalty agreement and a certification mark agreement by which Jaymar-Ruby, Inc. was to pay to the licensors 24 cents a yard as a royalty for the elastic used in the manufacture of slacks and 12 cents per yard for use of a certification mark known as NB. In arriving at the appraised value, he added to the invoice unit price 24 cents representing the patent royalty payment, and 12 cents representing the certification mark payment. He did not allocate these amounts to any particular element of constructed value and made no breakdown of the invoice value of 62 cents. The report of value was adopted by the appraiser.

At the original trial there was received in evidence a copy of patent # 2,757,381, granted to Yves Le Cottier and André Gérard Trentesaux, relating to trousers which had an elastic waistband and which did not require any other supporting means (exhibit 3).

Michael G. Berkman, a patent attorney, described the nature of the patent as follows:

> The patent claims a particular trouser structure. The novel features relating to the trousers include, among other elements, a waistband. That waistband is also defined in the claims. The waistband as called for is an elastic band which includes two almost laterally joined bands comprising an upper and a lower band, both elastic. The upper band being more resistant to elongation than the lower band; the two bands being integrally joined in this particular case along a zone. The trousers which form the subject matter of the invention are trousers in which a band is fastened to the trousers at the top or upper edge of the trousers, that being fastened by sewing to the zone between the

two laterally joined bands. In other words, the structure of the trousers is such that the upper band, which is the band more resistant to elongation, extends above the trousers while the lower band, which is the band least resistant to elongation, extends downwardly in the trousers and hangs free. This is the unique structure of the trousers which is the subject matter of the Le Cottier and Trentesaux patent.

In the opinion of Mr. Berkman, the merchandise involved herein could be manufactured and sold without violation of the patent, as the bands themselves were not within its scope. As long as they were used in a manner other than that described by the patent there would be no infringement.

There was also received in evidence an agreement of May 1959 between Yves Le Cottier and André Gérard Trentesaux, referred to as the licensor, and Jaymar-Ruby, Inc., referred to as the licensee, by which the latter was granted the right to use the patented invention and manufacture men's slacks in accordance therewith and to use the trademark NB. In return, the licensee was to pay the licensor a royalty of 12 cents for the trademark and 24 cents for the patent rights for each yard of resilient waistband received by the licensee from any manufacturer or supplier of such waistbands manufactured in conformity with the invention and used by the licensee (exhibit 9).

Another licensing agreement was entered into by the same parties on October 23, 1962, under which Jaymar-Ruby, Inc., was to pay the licensor 24 cents for each yard of waistband material used in the manufacture of trousers pursuant to the patent. (Exhibit 13.) At about the same time an agreement was entered into by Curacao Certifications, N.V., as the licensor, and Jaymar-Ruby, Inc., pursuant to which the licensor granted to Jaymar-Ruby, Inc., a license to use the trademark NB on trousers manufactured by it in accordance with the unique method developed by the licensor and its predecessor, for which Jaymar-Ruby, Inc., was to pay a royalty of 6 cents per yard for each yard of elastic waistband material used by it in the manufacture of trousers to which it applied the trademark. (Exhibit 14.)

At the original trial, H. M. Young, president of the importing company, testified that his firm imported the merchandise involved herein and stated that the prices appearing on the invoices were the prices actually paid and that no further sums of any kind were paid to the seller or to anyone else for the merchandise. After importation, his firm sold it to Jaymar-Ruby, Inc., at a price which covered the cost of acquiring the material plus import and duty costs and the firm's usual expenses and profits. His firm received no further sums in connection with the sale or use of the material from anyone. His firm does not do any manufacturing but simply imports and resells the merchandise.

Burton B. Ruby, president of Jaymar-Ruby, Inc., testified that his firm had been handling merchandise such as that involved herein for about 8 years. It has purchased about two million yards thereof from different countries where it was made, such as, France, Germany, Spain and the United States. It does not resell such material but uses it in the construction of men's slacks, under the patent represented by exhibit 3. Jaymar-Ruby, Inc., had become a licensee of such patent in May 1959. The licensing agreement (exhibit 9) did not relate to the purchase of any material. It did provide for the payment of royalties measured by the amount of waistband actually used in the manufacture of slacks. No royalty was paid for elastic webbing used in some other way than on trousers.

Harold Leinwand, executive controller and assistant treasurer of Jaymar-Ruby, Inc., testified that he was familiar with the method of computing and paying royalties under the patent license agreement. He testified that no certification mark royalties were paid on elastic waistband which did not have the NB mark thereon. Royalties under the patent license agreement were paid solely on the amount of webbing actually incorporated into completed trousers. In making his computation, he deducts the amount of material which may be returned to any supplier, any incidental sales made to other licensees, and waistband used to replace defective material in any slacks which are returned.

In view of the testimony of the import specialist at the rehearing, it is proper to reexamine the question of separability of the appraisement herein.

It is well settled that in a proper case, an appealing party in reappraisement proceedings may challenge one or more of the items entering into an appraisement while relying upon the presumption of correctness of the appraised value as to the other elements. *United States* v. *Gehrig, Hoban & Co., Inc.,* 54 CCPA 129, C.A.D. 924 (1967); *United States* v. *Chadwick-Miller Importers, Inc., et al.,* 54 CCPA 93, C.A.D. 914 (1967); *United States* v. *Bud Berman Sportswear, Inc.,* 55 CCPA 28, C.A.D. 929 (1967). An appraisement may not be deemed separable because the appraised value is a mathematical equivalent of the invoice price plus charges and it must be shown that the appraisal included the contested item, but a constructed separation may be effected where there is evidence to show that the appraiser in fact calculated value by adding charges to the invoice unit price or by subtracting them from the total invoice price. *United States* v. *Bud Berman Sportswear, Inc., supra; United States* v. *Gehrig, Hoban & Co., Inc., supra; United States* v. *Knit Wits (Wiley) et al.,* 62 Cust. Ct. 1008, A.R.D. 251,296 F. Supp. 949 (1969).

In *United States* v. *Gehrig, Hoban & Co., Inc., et al., supra,* it appeared from the record that the appraiser had found the value to be the invoiced unit value including packing and commission, less other charges. The court held, as did the court below, that the appraisement was separable. It quoted the following from the decision of the appellate term:

> A separate unit price for appraised merchandise must be shown, and the item in dispute must be one clearly identifiable as having been considered by the appraiser and as affecting dutiable value. * * *

In *United States* v. *Knit Wits (Wiley) et al., supra,* the evidence identified the item in dispute as a commission on export prices and a "Notice of Action—Increase in Duties" showed that it was an element in the appraised value. The appraisement was therefore held separable.

The separability doctrine has also been applied in cases where there was testimony that the appraised value was found by taking the invoice price and adding inland charges and commission. *United States* v. *Bud Berman Sportswear, Inc., supra; Reliance International Corp.* v. *United States,* 62 Cust. Ct. 845, R.D. 11639, 305 F. Supp. 20 (1969) ; *Carolina Mfg. Co.* v. *United States,* 62 Cust. Ct. 850, R.D. 11640 (1969) ; *Shalom Baby Wear, Inc.* v. *United States,* 62 Cust. Ct. 856, R.D. 11641 (1969) ; *Haddad & Sons, Inc.* v. *United States,* 62 Cust. Ct. 896, R.D. 11656 (1969).

In *The A. W. Fenton Co., Inc.* v. *United States,* 52 Cust. Ct. 405, Reap. Dec. 10660 (1964), the merchandise was appraised on the basis of constructed value and the record disclosed that the appraiser accepted the invoice price as the value of the merchandise, *per se,* except for some minor changes, and added 381.95 per centum, representing certain license rights. The court held that the appraisement was severable and that the plaintiff might challenge the inclusion of an amount for license rights, while relying upon the presumption of correctness as to the other elements of value.

See also *Cleveland Twist Drill Co. et al.* v. *United States,* 60 Cust. Ct. 893, R.D. 11542 (1968), where the merchandise was entered at DM180,000, appraised at DM1,000,000, and the appraiser testified that he concluded from the terms of an agreement as to license rights that the entered value should be advanced by DM820,000. The court held that the advance represented an addition for license fees and that the plaintiff need establish no more than that such inclusion was improper.

In the instant case it is clear that the appraisement was in fact made up of two elements—the value of the merchandise *per se* at 62 cents per yard and the royalties at 36 cents per yard. The item in dispute, the

royalties, is identified as having been considered by the appraiser and as being part of the appraised value.

Defendant urges that the doctrine of separability is not applicable because the invoice unit price of the merchandise was 62 cents a yard and plaintiff now contends it should be 64 cents a yard, and that, therefore, plaintiff is not relying on any of the components of the appraised value. It is evident, however, that plaintiff is not contesting the value of the merchandise *per se* as found by the appraiser but concedes that 2 cents per yard should be added because of an increase in cost by the time of exportation. It appears from the official papers that the merchandise was ordered in March of 1965 and was shipped in May and June. According to an affidavit of Walter Kalbskopf, general manager of the manufacturer, the cost of production of this merchandise was increased by 2 cents a yard as of May 10, 1965 (exhibit 19). This minor change from the invoiced and entered value of the merchandise, in favor of the Government, does not preclude the application of the separability doctrine when the only real issue is the propriety of the inclusion of the royalty charges in the appraised value.

In the instant case, the royalty and trademark fees were measured by the yardage of waistband material in trousers manufactured by the importer's customer. They were paid by the customer to patent owners for a license to produce the trousers by the method set forth in the patent and to trademark owners for the use of a trademark on the finished articles. They were not paid by the manufacturer of the waistband material and formed no part of the cost of producing it. They were not paid by the importer of the goods and would not have been payable at all, had the goods been used for other purposes than as part of trousers manufactured in accordance with the patent.

According to section 402(d) of the Tariff Act of 1930, as amended, constructed value consists of the sum of (1) the cost of materials and fabrication, (2) an amount for general expenses and profit equal to that usually reflected in sales of merchandise of the same general class or kind, and (3) the cost of all containers and coverings and other expenses incidental to placing the merchandise in condition, packed ready for shipment to the United States. A royalty which is not paid by the manufacturer of the merchandise or which is not included in the cost of materials to him or his general expenses does not form part of constructed value under the statute. *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, 39 CCPA 86, C.A.D. 468 (1951) ; *R. J. Saunders & Co., Inc.* v. *United States*, 23 Cust. Ct. 311, Reap. Dec. 7754 (1949) ; *United States* v. *Pacific Customs Brokerage Co. for Munising Wood Products Co., Inc.*, 32 Cust. Ct. 675, A.R.D. 44 (1954) ; *United States* v. *Henry A. Wess, Inc.*, 48 Cust. Ct. 700, A.R.D. 142 (1962) ; *Cleveland Twist Drill Co. et al.*, v. *United States, supra*.

In *United States* v. *Hensel, Bruckmann & Lorbacher, Inc.*, *supra*, the patents on certain machines were held by a Swiss concern known as Transkrit A.G. The manufacturer was a German corporation, Maschinen-Fabrik, M.A.N. The importer of the machines paid 88,000 RM directly to the manufacturer for the machine and paid Transkrit A.G. 40,000 RM for certain exclusive territorial rights of purchase. It was held that the latter was a license fee and was not a part of the cost of production of the merchandise.

*R. J. Saunders & Co., Inc.* v. *United States*, *supra*, involved unbound printed sheets for children's books, which, after importation, were bound into books. When such books were sold at retail, a certain sum was added to the retail price and transmitted to the author as a royalty. The court held that it was not a part of the cost of production of the imported sheets, stating (p. 315):

> In the instant case the merchandise as imported consisted of unbound printed sheets to which no royalty in any form attached. After importation and after these unbound printed sheets had been further processed or manufactured to the point where they were no longer unbound printed sheets, but were in fact books, and upon the sale of these books at retail, a royalty did attach. Under the authorities cited it would therefore be improper to add royalties to the cost of production of these unbound printed sheets.

In *Cleveland Twist Drill Co. et al.* v. *United States*, *supra*, it was held that amounts paid for the right to use a patented process unrelated to the cost of the machine designed to use that process were not part of the constructed value of the merchandise.

In the instant case, Jaymar-Ruby, Inc., paid fees to the patent holder solely for the right to manufacture trousers in the manner provided in the patent and to the trademark owners for use of the trademark on such trousers. The amounts paid were measured by the amount of elastic waistband material used in the course of manufacture. No royalty was paid on any waistband used in any other manner or on waistband material not bearing the trademark. It is obvious, therefore, that the royalties were paid for use of a process and a trademark and were not an expense incurred in the course of producing the waistband material itself. I conclude that such royalties and fees are not properly part of constructed value.

On the record presented, the constructed value is the value of the merchandise *per se* found by the appraiser which is unchallenged and on which plaintiff may rely plus 2 cents per yard representing the increased cost on the date of exportation. Under the circumstances, it is unnecessary to consider whether plaintiff has established the elements of constructed value independently.

I find as facts:

1. That the merchandise covered by these appeals for reappraisement consists of a waistband elastic fabric of a special construction exported from West Germany during May and June of 1965.

2. That said merchandise was invoiced and entered at 62 cents per yard.

3. That the merchandise was appraised on the basis of constructed value, as that value is defined in section 402 (d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, at 98 cents per yard, net packed, which value was made up of two elements—the value of the merchandise *per se* at 62 cents per yard, and royalties at 36 cents per yard.

4. That at the time of exportation of the within merchandise, the cost of producing the merchandise had been increased by 2 cents per yard.

5. That pursuant to various agreements, Jaymar-Ruby, Inc., purchaser of the within merchandise from H. M. Young Associates, Inc., the importer, was granted a license to manufacture trousers in accordance with a certain patent for which it paid a royalty of 24 cents a yard on the amount of elastic waistband material of the type involved herein used in the trousers. It was also licensed to use a certain trademark in such trousers, for which it paid a fee of 12 cents or 6 cents a yard measured by the amount of waistband material used in the trousers.

6. That said royalties or fees were not paid by the manufacturer of the waistband material, were not paid by the importer of the goods, and were not payable at all on portions of the goods not used in the manufacture of trousers in accordance with the patent.

I conclude as matters of law:

1. That constructed value, as that value is defined in section 402 (d) of the Tariff Act of 1930, as amended by the Customs Simplification Act of 1956, is the proper basis for the determination of the value of the merchandise involved herein.

2. That in view of the evidence showing that the appraiser made his appraisement on the basis of the invoiced and entered value of the merchandise of 62 cents per yard plus royalties and fees of 36 cents per yard, the appraisement is deemed separable and plaintiff may challenge the propriety of including the royalties in the constructed value of the merchandise without proving the elements of constructed value as to the value of merchandise *per se* as found by the appraiser. The concession that said value should be 64 cents per yard instead of 62 cents per yard because of an increase in cost of production does not preclude the application of the separability rule.

3. That the royalties or fees described in findings of fact 5 and 6 form no part of the constructed value of the within merchandise.

4. That the constructed value of the merchandise is 64 cents per yard, net packed.

Judgment will be entered accordingly.